## SUPREME COURT—IN BANCO.

### JULY TERM—1875.

*Allen, Ch. J., Harris and Judd, J. J.*

### KINI MAKA (w.) *vs.* AH FAI, (CHINAMAN.)

A STATUTE passed by the Legislature which enacts that "no marriage of a Hawaiian woman with a Chinaman shall be invalid by reason of a previous marriage of such Chinaman in China; provided that such marriage shall have been unknown to such Hawaiian woman at the time of her marriage,"—is UNCONSTITUTIONAL and void.

OPINION BY HARRIS, J.

The libellant, a Hawaiian woman, files a petition for the annulment of her marriage with the libellee, a Chinaman, alleging that she had been married to the libellee in this country on the 15th day of December, 1870, but that the libellee, Ah Fai, had been married previously in Canton in China, and that the wife which he then married is now living and has never been divorced and therefore remains his lawful wife.

The petitioner asks that her marriage with the libellee may be declared null by the authority of the 1815 Section of the Civil Code, which reads as follows:

"A marriage may be declared null on the ground that one of the parties has an undivorced husband or wife living on the application of either of the parties during the life-time of the other, or on the application of such former husband or wife."

The 1284 Section of the Civil Code reads as follows:

"In order to validate the marriage contract it shall be

necessary   *   *   * that the man shall not have at the time
a wife living."

It appears from the whole statement of the case, that both'
of these parties are anxious to get rid of any obligation that
may have been upon them by reason of their alleged mar-
riage.   To this end the libellee in this case, some months
ago, filed a libel against the libellant, but his petition was
denied by Mr. Justice JUDD on grounds which were deemed
sufficient by him, and among them, that the man knew of
his previous marriage if any existed, at the time of contract-
ing this one and should not be relieved from the effect of his
own wrong.   It follows, as a matter of course, that neither of
these parties have any interest in defending this suit, which
imposes upon the Court the necessity of watching narrowly
for the right.

On the 20th of May, 1874, the Legislature passed the
following rather peculiar enactment:

"Be it enacted, &c.   Section 1.   No marriage of a Ha-
waiian woman with a Chinaman shall be invalid by reason of
a previous marriage of such Chinaman in China; provided
that such marriage shall have been unknown to such Hawai-
ian woman at the time of her marriage.

"Section 2.   ALL laws inconsistent herewith are hereby
REPEALED."

Mr. Justice Harris intimated at the hearing before him,
that he was of the opinion that this enactment was void as
being contrary to public policy and sound morality.   But it
was evident that if the enactment had any binding effect the
petition must be denied, and that as the Supreme Court
would sit in Banco in a few days, he thought it most for
public justice that the petition should be denied on the
authority of that enactment, from which decision an appeal
could be taken, and the validity or invalidity of the statute
be authoratively determined; and it would be of no use to go
into the case very thoroughly, because that, if the enactment

was held to be binding, it would be labor lost. He was therefore willing to take the testimony taken in the former case between the same parties as though it were given in this, and deny the petition on the ground of the statute, and take the opinion of the Supreme Court on the point of its validity.

It must be apparent to any person that if the Chinese marriage is valid and this law has any effect, a Chinaman may have two wives in this country, for on the advent of his Chinese wife into this country, and claiming him for her husband, her marriage would be held valid, if the case of Wai See and Ching See *vs.* Young Sheong *et al.* is to be sustained; and the Hawaiian woman's marriage is not to be declared invalid. Thereby Bigamy is established in favor of Chinamen. Now, if in favor of Chinamen and not in favor of any other race of men, then there is a clear violation of the 13th Article of the Constitution, which reads:

"The King conducts his government for the common good and not for the profit or *interest* of any one man, family or *class*, of men among his subjects."

That is to say, laws have to be passed bearing upon all persons alike.

But if the repealing clause in the second section is to be taken literally, then the provision of the 1284 Section, previously quoted, is repealed; for it is clearly inconsistent with the Act under consideration, and it will follow, that it is no longer necessary in this country, in order to validate the marriage contract, that a man should not have a wife living, that he may take a wife here notwithstanding that he has a wife living: it is likewise inconsistent with Chapter 13, Section 1 of the Penal Code, which defines and punishes Polygamy, and would operate to repeal it.

This could not have been the intention of the Legislature. The act is inconsistent with the provisions of the Constitution and contrary to public policy and sound morality, and by

80

virtue of the authority vested in this Court, by the 824 Section of the Civil Code, must be declared null and void, and is hereby so declared.

The cause is remanded to the Justice before whom the case was brought for hearing upon the facts and he will take the testimony in the case fully, without reference to the testimony taken in any other case between the same parties.

J. P. Green for libellant.

A. S. Hartwell for libellee.