## Von Cotzhausen *v*. Nazro and another.

*(Circuit Court, E. D. Wisconsin.* October, 1879.)

1. Unlawful Importation through Mail—Woolen Shawl Dutiable—Seizure by Collector—Action for Conversion.

A knit woolen shawl sent as a present through the mail from Germany in a registered package on which was indorsed the contents of the package and the words "Suspected liable to customs duty," was opened by the party to whom it was addressed, at the post-office, in the presence of a deputy collector, who took it from her, had it appraised, and refused to deliver it until she had paid the appraised value or received permission from the secretary to pay the duty and to receive the package. In an action for wrongful conversion, *held*, that the article was dutiable; that its importation through the mails was unlawful, though the intent of the sender was innocent; that it was the duty of the proper officer, if he had reasonable cause to believe it was subject to duty, or had unlawfully been introduced into the United States, to seize it, and having done so, he was by law the custodian of the property; that the owner could only reclaim it by payment of the appraised value or appeal to the secretary of the treasury for relief; and that there was not a wrongful conversion of the property.

2. Same—Ownership as Entitling to Possession.

Where property that is dutiable is imported contrary to law, it is liable to seizure, and it does not follow from the fact of ownership that the owner would be entitled to possession.

3. Same—Section 2082, Rev. St.—Merchandise not for Sale.

Section 2082 of the Revised Statutes comprehends any merchandise imported contrary to law, and is not limited to merchandise sent or received for sale.

At Law.

This was an action to recover the value of a certain article of personal property which was sent to the plaintiff by a relative residing in Germany, in a sealed envelope, through the mail, and which it was claimed had been unlawfully converted by the defendants to their own use. The defense to the action was that the defendant Nazro was collector of customs, and that the defendant Payne was postmaster at the city of Milwaukee; that the article in question was subject to customs duty under the customs laws of the United States; that the duty not having been paid, the article was liable to seizure and

detention, and that the acts done by the defendant Nazro were done under color of his office, and by virtue of the laws of the United States, and that the defendant Payne acted under and by authority of the defendant Nazro as such collector, aiding and assisting him in respect thereof. The case was tried by a jury. The proofs were, in brief, that in the month of May, 1877, a sealed package, addressed to the plaintiff, came by mail to the Milwaukee post-office; that it came as a registered package, and that the plaintiff was notified of its arrival; that she went to the post-office to receive it, and receipted for it according to the usual practice in cases of delivery of registered letters or packages. The package was marked, "Suspected liable to customs duty," and the collector of customs was notified of its receipt. There was also an indorsement on the package indicating its contents. The package was then placed in the hands of Mrs. Von Cotzhausen, who opened it, and thereupon the deputy collector, who, on notification, was present, took it from her hands, and thereafter retained it, subsequently causing its contents to be appraised by the government appraiser. The article inclosed in the package was a knit shawl, made from fine wool, and was appraised at six dollars. It was sent, as the testimony tended to show, to the plaintiff, by her daughter-in-law residing in Germany, as a present or token of affection. Subsequently personal application was made to the deputy collector by the plaintiff for the article, and she was told that there were two courses for her to pursue; that she could pay the appraised value and take the package, or could apply to the secretary of the treasury for permission to pay the duty and receive the package.

The matter being placed in the hands of her counsel, the same alternative was submitted to him, and he declined to take either of the courses suggested. After some further negotiations this suit was brought, and the article in question has ever since remained in the hands of the collector, but no steps have ever been taken by him to procure a judicial adjudication of forfeiture. It appeared that in receipting for the package at the post-office, answering inquiries in relation to it, opening it in the presence of the deputy collector, surrendering it to his hands, and leaving it with him, the plaintiff acted upon the suggestion or under the requirement of those present. At the interviews of the plaintiff and her counsel with the deputy collector no offer was made to pay the duty if the property should be surrendered; and the plaintiff's counsel, Mr. Cotzhausen, testified that he was told at the collector's office that it was confiscated as smug-

gled goods. The seizure was made without regard to the intent of the party sending the package or that of the party expected to receive it. An entry of the seizure and appraisal was made in the collector's office, and the seizure was reported to the secretary of the treasury. The jury returned a special verdict by which they found—

(1) That the article in question was sent from a foreign country by mail, inclosed in a sealed envelope, addressed to the plaintiff at Milwaukee, and was transmitted by mail thus inclosed to its point of destination; (2) that the contents of the package were disclosed by writing placed upon it by the sender; (3) that the package was received at the Milwaukee post-office, and that the collector of customs was notified of its receipt; (4) that the package was placed in the hands of the plaintiff by a clerk in the post-office in the presence of the deputy collector, and that she opened it; (5) that the deputy collector then seized the article after it was so opened; (6) that the collector thereafter caused the article to be appraised by the appraiser for this collection district, and that he refused to surrender it to the plaintiff without payment of the amount of the appraisal; (7) that the article was not sent by mail for the purpose, or with intent on the part of the sender or the plaintiff, to avoid the payment of duties thereon; (8) that the value of the article on the twenty-first day of May, 1877, was four dollars.

On this verdict both parties move for judgment.

*Cotzhausen, Sylvester & Scheiber,* for plaintiff.

*G. W. Hazelton,* for defendants.

DYER, J. A proper disposition of the questions involved requires an examination of various statutes and regulations of the treasury department touching the collection of duties upon imported articles. And, *first,* it is not claimed, and upon the testimony there is no ground for claiming, that the transmission of the article in question through the mails, even if it is dutiable, was an act of smuggling. It was not a clandestine importation within the definition of that term. The jury has found that it was not sent with intent on the part of the sender or receiver to avoid the payment of duties thereon, and this finding is undoubtedly sustained by the fact that the contents of the package were indorsed on the envelope inclosing it by the sender.

I do not think there is room for doubt that the article is dutiable. It is a knit woolen shawl, and comes under one of the subdivisions of Class 3 in Schedule L, entitled "Wool and Woolen Goods," in title 33 of the Revised Statutes, which relates to duties upon imports.

By the detailed regulations for the execution of the treaty concerning the formation of a general postal union, concluded at Berne, October 9, 1874, which regulations were put into execution on the day

on which the treaty came into force, and have the same duration as the treaty, and have the force and effect of law, (paragraph 25, 19 St. at Large, 604) it is provided that "there shall not be admitted for conveyance by the post any letter or other packet which may contain either gold or silver money, jewels or precious articles, or *any other article whatever liable to customs duties.*"

By section 3061 of the Revised Statutes an officer of the customs is authorized to search and examine any person on whom he shall suspect there is *merchandise* which is subject to duty, or shall have been introduced into the United States in *any manner* contrary to law, whether by the person in possession or otherwise, and to search any envelope, wherever found, in which he may have a reasonable cause to suspect there is *merchandise* which was imported contrary to law; and if such officer shall find any merchandise on or about such person, or in any such envelope which he shall have reasonable cause to believe is subject to duty, or to have been unlawfully introduced into the United States, he shall seize and secure the same for trial.

Section 3074 provides that in all cases of seizure of property subject to forfeiture for any of the causes named in any provision of law relating to the customs, when, in the opinion of the collector making the seizure, the value of the property seized does not exceed $500, he shall cause an appraisement of the same to be made in the manner prescribed, which appraisement shall be properly attested by the collector and the persons making the appraisal.

Section 3086 provides that "all merchandise or *property of any* kind seized under the provisions of any law of the United States relating to the customs shall, unless otherwise provided by law, be placed and remain in the custody of the collector to abide adjudication by the proper tribunal or other disposition according to law."

By section 3081 it is provided that "the collectors of the several districts of the United States, in all cases of seizure of any merchandise for violation of the revenue laws, the appraised value of which in the district wherein such seizure shall be made does not exceed $1,000, are hereby authorized, subject to the approval of the secretary of the treasury, to release such merchandise on payment of the appraised value thereof."

Section 3082 provides that "if any person shall fraudulently or knowingly import  *  *  *  into the United States  *  *  * any merchandise contrary to law, or shall receive  *  *  *  such merchandise after importation, knowing the same to have been im-

ported contrary to law, such merchandise shall be forfeited, and the offender shall be fined * * * or be imprisoned * * * or both."

By section 251 of the statutes the secretary of the treasury is authorized to prescribe rules and regulations, not inconsistent with law, to be used in carrying out the provisions of law relating to raising revenue from imports, or to duties on imports.

On the ninth of July, 1875, the following amended regulation or order numbered 2375 was made by the post-office department, with the concurrence of the treasury department, and was by the latter department published September 1, 1875, for the guidance of officers of the customs:

"Ordered that section 52, *c.* 3, of the regulations of the post-office department, issued by authority of the postmaster general on the third of April, 1873, as modified by the order of the postmaster general of January 3, 1874, be modified and amended so as to read as follows:

"Section 52. When letters, sealed packages, or packages, the wrappers of which cannot be removed without destroying them, from a foreign country, are received through the mails at any post-office, and the postmaster has reason to believe that such letters or packages contain articles liable to customs duty, he shall immediately notify the customs officer of the district in which his office is located, or the customs officer designated by the secretary of the treasury to have access to the several post-offices to examine the mails arriving from foreign countries, of the receipt of such letters or packages, and the names of the persons to whom the same are addressed, and retain such letters or packages a reasonable time for the purpose of allowing such customs officer to examine them. Letters registered or ordinary or sealed packages, or packages, the wrappers of which cannot be opened without destroying them, can only be opened by the parties addressed; and when such letters or packages are received at the office of destination, stamped as hereinafter provided, the parties addressed should be notified by the postmaster at the office of delivery that such a letter or package has been received at his office, believed to contain articles liable to duty, and that the same will be returned to the office of the country from whence it came, unless the person to whom it is addressed shall appear at the post-office, at a time in said notice to be designated, not exceeding 20 days from the date of said notice, and receive and open the said letter or package in the presence of an officer of the customs; and postmasters are hereby instructed and directed to extend to custom-house officers all proper facilities, and permit customs officers specially designated for that purpose by the secretary of the treasury to have access at all times to their respective offices for the purpose of examining mail-matter received from foreign countries, in order to protect the customs revenue from frauds practiced through the mails:

"Provided, however, that nothing herein contained shall authorize or allow customs officers to seize or take possession of any letter or package while the

same is in the custody of a postmaster, nor until and after the same has been delivered to the person to whom it is addressed, unless the package, when examined, is found to contain articles liable to customs duty:

"And provided further, that no letter or package which is believed to contain articles liable to duty shall be detained at an intermediate office, when the discovery inducing that belief is made at such office, more than 24 hours, nor at the office of delivery a longer period of time than may be necessary for the person to whom such letter or package may be addressed to appear, after the notice hereinbefore provided has been given; but when an unsealed package is found, on examination, to contain an article or articles liable to customs duty, it should be delivered to the proper officer of the customs, and the postmaster should inform the person to whom it is addressed of its arrival in the mails and its delivery to the customs officer; and it shall be the duty of the postmaster at an office at which a letter or sealed package (addressed to an interior office) suspected of containing articles liable to customs duty shall arrive in the mails from a foreign country, before forwarding such letter or package to the office of destination, to cause the envelope or wrapper thereof to be plainly stamped across its face with the words 'Suspected liable to customs duty.' "

On the third day of May, 1877, the following order was promul‐ gated by the treasury department:

"It appears from official reports received from various officers of this department that articles from foreign countries are frequently imported through the mail to the loss of the revenue. Such importations, with certain exceptions, are illegal, and the articles become subject to seizure and forfeit‐ ure for a violation of the revenue laws. Collectors of customs will therefore seize all such packages (with the exception of those hereinafter specified) de‐ livered to them under the existing regulations of the postmaster general, em‐ bodied in printed decision No. 2,375 ;" which is the order or regulation last-before recited, as made by the postmaster general on the ninth of July, 1875. "If the importation be less than $50 in value, the collector will deliver the goods to the party entitled thereto, on payment of their appraised value, to be accounted for in the same manner as the proceeds of other forfeitures ; and if of $50 or more in value, he will report the case to the department for special instruc‐ tions."

Certain importations by post from Canada, not exceeding a cer‐ tain weight, were excepted from the operation of this order. It should be noticed in this connection that, by regulation of the treasury de‐ partment made May 16, 1876, it was declared that—

"The general postal union concluded at Berne, October 9, 1874, is not con‐ strued by the department as exempting from customs duty * * * articles received in the mails from postal-union countries, which, by the laws of the United States, are subject to duty; or as changing in any particular the course of proceedings for the collection of customs duties on such articles, prescribed by section 52 of the post-office regulations, as modified by the order of the

postmaster general, dated the ninth of July last, and embodied in the printed decision of this department, No. 2,375."

These are the provisions of law and regulations of the department which it seems necessary to notice. And from them we learn, *first*, that the sending of this article by mail was forbidden, regardless of the intent of the sender. On its arrival at destination a course of procedure is prescribed relative to seizure and appraisement. When seized, the law places it in the custody of the officer to abide adjudication, with only the right on his part to release it on payment of the appraised value.

The regulations of the treasury department are such as are warranted by, and not inconsistent with, the law, and hence have the effect of law; and I do not see but what the officers complied substantially with the regulations.

The only point concerning which there may be doubt is this: Since section 3082 declares that if any person shall *fraudulently* or *knowingly* import any merchandise contrary to law, or shall receive it knowing it to have been so imported, the property shall be forfeited and the person punished, the question is whether there can be a lawful seizure if these elements of fraud or guilty knowledge are wanting? Counsel for plaintiff contends that the whole right is dependent upon the intent with which the property is imported. The attorney for the United States argues that the importation was contrary to positive provision of law; that the statute directs the seizure of all property imported contrary to law; that this article being dutiable it was seized in pursuance of the statute; that if a positive law was violated in importing the article, that fact rendered the article forfeited or forfeitable, regardless of intent. This, upon the principle that a party is presumed to know the law and will not be heard to plead ignorance of the law, and that guilty knowledge is only required to be shown as the basis for a criminal proceeding. That the provisions of this section (3082) are strictly penal is obvious. The supreme court has held (*Stockwell* v. *U. S.* 13 Wall. 531) that the design of this act was to punish as a crime that which before had subjected its perpetrator to civil or *quasi* civil liability, and that it is cumulative in its character to other provisions of law which had previously existed, rather than substitutionary.

Whatever may be the correct view of this question,—namely, the necessity of proving actual fraud or guilty knowledge for the purpose of obtaining ultimately a judicial adjudication of forfeiture,—these

conclusions, under the various provisions of law referred to, seem unavoidable: that this article was dutiable; that its importation through the mails was absolutely forbidden, and therefore unlawful, though the intent of the sender was innocent; that by express provision of law, because it was dutiable, and because of the manner in which it was sent, it became the duty of the proper officer, on arrival of the article at destination, to seize it, it being then only necessary to the seizure that he had reasonable cause to believe that it was subject to duty, or to have been unlawfully introduced into the United States; that the seizure being effected, the law made the seizing officer the custodian of the property; that by further express statutory provisions the owner could only reclaim it by payment of the appraised value, or appeal to the secretary of the treasury for relief; and that as the property was seized in conformity with law, and therefore came lawfully in possession of the seizing officer, there was not a wrongful conversion of it by the defendants.

Counsel for the plaintiff has called attention to section 3058 of the Revised Statutes, which provides that "all merchandise imported into the United States shall  \* \* \*  be deemed and held to be the property of the person to whom the merchandise may be consigned, any sale, transfer, or assignment, prior to the entry and payment of the duties, on such merchandise  \* \* \*  to the contrary notwithstanding;" and upon this provision it is urged that the title of Mrs. Von Cotzhausen has not been divested; that she is the owner of the property, and therefore entitled to possession. But by the express terms of this provision the ownership is thus declared for the purpose of enforcing payment of duties, and the evident intent of the provision is to preserve the same liability to payment of duty in case of a sale or transfer of the property as existed under the original ownership; and, further, there is nothing in this section which is inconsistent with other provisions giving power of seizure even as against the original owner. If the property is dutiable, and has been imported contrary to law, and is consequently liable to seizure, it would not follow from the fact of ownership that the owner would be entitled to possession.

It is further contended that section 3082, which declares that, if any person shall fraudulently or knowingly import into the United States *any merchandise* contrary to law, such merchandise shall be forfeited, was not intended to embrace a mailable article such as that in question and sent for the purposes here disclosed, but was intended to embrace only merchandise designed for the market. I do not

think the section can be so construed. It comprehends *any* merchandise imported contrary to law, and is not limited to merchandise sent or received for sale. And as the term "merchandise" means any article which is the object of commerce, or which may be bought or sold in trade, it is plain that the article in question is an article of merchandise. Moreover, by section 2766 it is declared that "the word 'merchandise,' as used in this title, may include goods, wares, and chattels of every description capable of being imported."

Attention has been called to the sections of the Revised Statutes (3875, 3876, 3877, and 3878) defining mailable matter, and dividing it into classes; mailable matter of the third class including flexible patterns and samples of merchandise not exceeding 12 ounces in weight. But this, as I understand it, has reference to interstate mail matter, and is not intended to permit the transmission of articles therein enumerated which are subject to duty through the mails, from a foreign country, in disregard of the provisions of the postal-union treaty and of the regulations for its enforcement. And the force of this observation is apparent, when it is noticed that some of the articles designated in section 3878 as third-class mail matter are by the law imposing customs duties made dutiable. So, too, I do not think that section 3895, which provides for the return to the owner or sender of letters, packets, or other matter which may be seized for violation of law, was intended to be applied to dutiable articles sent through the mails from a foreign country, and the sending of which is forbidden by the postal-union treaty. Section 3991 provides, among other things, that "all laws for the benefit and protection of customs officers making seizures for violating revenue laws shall apply to officers making seizures for violating postal laws."

Authorities were cited on the part of the plaintiff to the effect that where there are serious ambiguities in the statute, the construction should be in favor of the importer, and that duties are not imposed upon a doubtful interpretation. But I do not find the article in question dutiable upon a doubtful interpretation of the statute.

Among the cases cited is that of *U. S.* v. *Thomas*, 2 Abb. (U. S.) 116, in which it was held that no penalty or forfeiture is incurred or can be enforced, simply because the duties on imported goods are not paid or accounted for before the importation is complete, and that it is by acts or omissions *subsequent* to the importation that forfeitures and penalties are incurred. The court, however, expressly except from the operation of this undoubtedly correct general principle the case where some law expressly declares the importation itself, or *the*

*manner of making it,* unlawful. And it is the manner in which the article here was sent—it being dutiable—which the regulations of the treaty expressly forbid. Judgment will be entered in favor of the defendants.

---

This judgment of the circuit court has been affirmed on writ of error by the supreme court of the United States. See 2 Sup. Ct. Rep. 503.