### THE KING *vs.* TONG LEE.

ON APPEAL FROM THE POLICE COURT ON POINT OF LAW.

AN ACT OF THE LEGISLATURE providing for the erection of public laundries, forbidding the carrying on of the business of laundry keeping or washing for hire within a circuit of three miles from the junction of Nuuanu and King streets, in Honolulu, is an exercise of the police powers of the State with regard to the comfort, welfare and safety of society, and is constitutional.

Opinion of the Court by JUDD, J.

At the last session of the Legislative Assembly the following Act was passed:

AN ACT RELATING TO LAUNDRIES AND WASH-HOUSES.

*Whereas,* the increasing number of laundries and wash-houses within the limits of the City of Honolulu tends to the propagation and dissemination of disease; and

*Whereas,* it is advisable that all laundries and wash-houses should be placed under the control and inspection of the Board of Health; therefore

*Be it enacted by the King and the Legislative Assembly of the Hawaiian Islands in the Legislature of the Kingdom assembled :*

Section 1. It shall be lawful for, and the Minister of the Interior is hereby authorized and empowered to cause to be built and erected, on the banks of the stream known as the "Makaho stream," on the land called "Kaliukai," a sufficient number of laundries and wash-houses, and to let the same to such persons applying therefor, at such rents and upon such terms as the said Minister shall deem reasonable.

Sec. 2. Such laundries and wash-houses when erected shall be under the supervision and control of the Board of Health.

Sec. 3. From and after the commencement of this Act, every person who shall carry on the business of laundry keeping or washing for hire, within the limits of the City of Honolulu, except in such buildings as shall be erected as provided by Section 1 of this Act, shall be liable to a fine of fifty dollars for each and every day, or part of a day, during which he shall so carry on such business, and in default of payment of such fine shall be imprisoned at hard labor until such fine is paid.

Sec. 4. The City of Honolulu, for the purpose of this Act, shall be deemed to be included within a circuit of three miles from the junction of Nuuanu and King streets.

Sec. 5. Nothing in this Act contained shall be deemed or construed to prevent persons washing in or on the banks of streams, in places hitherto used for that purpose.

Sec. 6. This Act shall take effect and become a law on the first day of October next.

On the 9th of October the defendant Tong Lee was charged in the Police Court with the violation of this law. He plead guilty to the carrying on of a laundry and wash-house within the limits designated in this Act, and urged that the Act was unconstitutional and void. The Police Justice imposed the statutory penalty, and the defendant appealed to the Supreme Court in Banco.

PER CURIAM.

The Act has many peculiar features which have attracted our attention.

1. The preamble recites that the "increasing number of laundries and wash-houses within the limits of the City of Honolulu tends to the propagation and dissemination of disease." It does not declare the washing of clothes and the allowing of the contaminated water therefrom to accumulate where it may propagate and disseminate disease, to be dan-

gerous to the public health and therefore a nuisance, but it enacts that the increasing number of such houses tends to the propagation of disease, suggesting that the Legislature contemplated not so much the past or present danger to the public health as the liability that the increasing number of these houses would produce disease.

2. The second section of the Act places the laundries and wash-houses authorized to be erected by Section 1 of the Act "under the supervision and control of the Board of Health."

If the law means such a supervision and control of the business of washing as may be necessary to protect the public health, then the grant of such power would seem to be superfluous, as Chapter 59 of the Penal Code confers the power upon the Board "to enter upon any land, building or vessel for the purpose of examining into and destroying, removing or preventing any nuisance or source of filth." The Board of Health had, by the general law previous to the passage of this Act, all the power over this business of washing as well as over other enterprises necessary to enable it to carry out its functions as guardians of the public health.

3. Washing clothes within the limits prescribed by the law is not prohibited. This washing must be made a business of, that is, it must be pursued as an occupation for gain or hire to make it punishable. It is urged before us that it is unreasonable and illogical to say that the business of washing is of itself harmless and inocuous, but when the occupation is pursued for hire as a means of livelihood it then becomes dangerous to the public health. The health of the individual demands cleanliness of apparel, and it is undoubtedly the right of every individual to have his apparel cleansed by washing. Why, then, should this essential domestic function be condemned by the law when it is pursued for hire? It is suggested in answer that a larger amount of filth detrimental to the public health will be likely to be accumulated in the water used in public than in private laundries. This is not at

The King *v.* Tong Lee.

all clear. The laundrying of the principal hotel in this city is probably greater than that of many public laundries or wash-houses. One is forbidden, the other is not.

If it be a question of degree alone which makes this business dangerous or not to the public health, the Legislature could have prescribed the number of persons whose washing could be done in any one locality, beyond which it was to be considered dangerous; but the extent to which this occupation can be pursued and yet be harmless is not defined by the statute. The only limit in the law is that washing for hire is considered noxious; all other washing is not, be the same more or less.

Laundries are necessary in every country, and the greater the population the greater their number. They are not manifestly and palpably nuisances. With proper drainage or sewerage whereby to dispose of the contaminated water and soapsuds, a laundry is far from being unwholesome or capable of affecting the public health. The want of sewerage in this town of Honolulu was undoubtedly the ground for the enactment of this law.

The proper disposition of the contaminated water from either public or private laundries is a legitimate matter for the regulation of the Board of Health.

4. The City of Honolulu has no limits prescribed by law. The District of Honolulu extends from Maunalua to Moanalua. But the Act under contemplation establishes the limits of the city for the purposes of this Act to be a circuit of three miles from the junction of Nuuanu and King streets. The well populated portions of the town of Honolulu do not extend beyond one mile from this point in any direction. Within one mile from this point are slaughter-houses and soap factories, occupations presumably offensive and deleterious to the public health.

All these points have been urged before the Court with great earnestness, and would appear to us to be powerful argu-

The King *v.* Tong Lee.

ments if used on the floor of the Legislature against the passage of such a law.

But the Legislature deemed that the existing statutes did not give the Board of Health authority sufficiently ample to protect the public health, and found it necessary in its wisdom to prohibit this business within the limits described in the law, and though it may be difficult to discover what could have moved the Legislature to condemn washing for hire in an area of territory where there is no population whose health could be affected by it, yet they have done so, and it only remains for us to inquire into the power of the Legislature to pass such a law.

The authority to enact a law of this character is derived from the inherent power which every sovereign State possesses to protect the life, property and health of its citizens. Says Judge Shaw, in Commonwealth *vs.* Alger, 7 Cushing, 84: " We think it is a well settled principle, growing out of the nature of well-ordered civil society, that every holder of property, however absolute and unqualified may be his title, holds it under the implied liability that his use of it shall not be injurious to the equal enjoyment of others having an equal right to the enjoyment of their property, nor injurious to the rights of the community. Rights of property, like all other social and conventional rights, are subject to such reasonable limitations on their enjoyment as shall prevent them from being injurious, and to such reasonable restraints and regulations established by law as the Legislature, under the governing and controlling power vested in them by the Constitution, may think necessary and expedient."

" This is very different from the right of eminent domain; the right of a Government to take and appropriate private property whenever the public exigency requires it, which can be done only on condition of providing a reasonable compensation therefor. The power we allude to is rather the police power; the power vested in the Legislature by the Constitu-

tion to make, ordain, and establish all manner of wholesome and reasonable laws, statutes, and ordinances, either with penalties or without, not repugnant to the Constitution, as they shall judge to be for the good and welfare of the commonwealth, or the subjects of the same."

Our Constitution contains a similar provision in Article 48: "The Legislature has full power and authority * * * from time to time to make all manner of wholesome laws not repugnant to the provisions of the Constitution."

It is, however, urged that the Act we are considering is repugnant to Article 9 of our Constitution, which reads: "No person * * * shall be deprived of life, liberty, or property without due process of law."

Judge Field, in his dissenting opinion in the slaughter-house cases (16 Wallace, 87), says: "It is considered in justification for the Act in question that it was adopted in the interest of the city, to promote its cleanliness and protect its health, and was the legitimate exercise of what is termed the police power of the State. That power undoubtedly extends to all regulations affecting the health, good order, morals, peace and safety and is exercised on a great variety of subjects, and in almost numberless ways." "All sorts of restrictions and burdens are imposed under it; and when these are not in conflict with any Constitutional prohibitions, or fundamental principles, they cannot be successfully assailed in a judicial tribunal."

In that case the Legislature of Louisiana had passed an Act designating a place under the control of a corporation where cattle could be landed and slaughtered, and imposed a penalty of $250 upon whoever should land and slaughter animals in an area of 1,154 square miles, except in the designated abattoirs.

The majority of the Supreme Court of the United States sustained the constitutionality of the Act; and Judge Miller, for the Court, referring to the provision of the Constitution of the United States, that "No State shall deprive any person of life, liberty, or property without due process of law," says:

"It is sufficient to say that under no construction of that provision that we have ever seen, or any that we deem admissible, can the restraint imposed by the State of Louisiana upon the exercise of their trade by the butchers of New Orleans be held to be a deprivation of property within the meaning of that provision."

Chief Justice Shaw also says in Commonwealth *vs.* Alger, above cited, p. 86: "Nor does the prohibition of such noxious use of property (a prohibition imposed because such use would be injurious to the public), although it may diminish the profits of the owner, make it an appropriation to a public use, so as to entitle the owner to compensation. * * * If the owner of a warehouse in a cluster of other buildings could store quantities of gunpowder in it for himself and others, he might be saved the great expense of transportation. If a landlord could let his buildings for a small-pox hospital or a slaughter-house, he might obtain an increased rent. But he is restrained, not because the public have occasion to make the like use or make any use of the property, or to take any benefit or profit to themselves from it, but because it would be a noxious use, contrary to the maxim *sic utere tuo ut alienum non laedas.*

"It is not an appropriation of the property to a public use, but the restraint of an injurious private use by the owner, and is therefore not within the principle of property taken under the right of eminent domain." But as Chief Justice Shaw says, ed., p. 85: "It is much easier to perceive and realize the existence and sources of this power than to mark its boundaries or prescribe limits to its exercise."

Says Cooley on Constitutional Limitations, p. 577: "The limit to the exercise of the police power in these cases must be this—the regulations must have reference to the comfort, safety or welfare of society."

The Act in question does purport to have reference to the comfort, safety and welfare of society. Its object, however

injudiciously expressed, is plainly to repress what in the opinion of the Legislature tends to the dissemination and propagation of disease.

We are unable to see that the Act in question violates this provision of the Constitution, as no property of the citizens is appropriated by the State, or destroyed without due process of law.

The State, by its Legislature, possesses the right to make such laws as it deems to be wholesome, and the exercise of this power is subject to no review except by the body of society itself, except so far as these laws may be inhibited by the Constitution itself, or be repugnant to its provisions. The Judiciary is not vested with the authority to decide whether laws enacted by the Legislature are politic, wise or reasonable. "If a Court is to judge of such a question at all, it must go over the same field upon which the Legislature has acted. It must consider the occasion of the law, the existence of the evil, the suitableness of the remedy. This would make it a superior Legislature." Wynehamer vs. People, 13 N. Y., 412.

As was said by Senator Verplanck in 20 Wendell, 381: "It is difficult upon any general principles to limit the omnipotence of the sovereign legislative power by judicial interposition, except so far as the express words of a written Constitution give that authority. It is only in express constitutional provisions limiting legislative power, * * * that I can find a safe and solid ground for the authority of Courts of justice to declare void any legislative enactment."

Blackstone, 1 Com., 91, says: "But if the Parliament will positively enact a thing to be done which is unreasonable, I know of no power in the ordinary forms of the Constitution that is vested with power to control it; and the examples usually alleged in support of this sense of the rule do none of them prove that when the main object of a statute is unreasonable the Judges are at liberty to reject it; for that were to set the judicial power above the Legislature, which would be subversive of all government."

Our own law is that, "The Supreme Court shall have the power to declare null and void any such law, ordinance or decree as may, upon mature deliberation, appear to it contrary to the Constitution, or opposed to the law of nations, or any subsisting treaty with a foreign power." Civil Code, Section 823.

What provision of the Constitution is this Act repugnant to?

It is not class legislation; for all classes of persons are prohibited from pursuing this business of washing for hire within the designated limits.

The individual transgressing this Act is not deprived of the right of trial by jury, for these cases are triable in the Supreme Court with a jury; and if the Lower Courts had jurisdiction, there would still be an appeal to a jury. To say that there must be a jury to decide whether the particular laundry carried on by the defendant was detrimental to the public health would deny to the Legislature the right to enact this law. That the Act, to be effectual for sanitary reform, is not sweeping enough, and does not prohibit washing when done by the individual for himself or his family, or by his domesticated servants, does not make it unconstitutional. Because the Act exempts those who wash for themselves, and not for hire, it is no reason for saying that those who are forbidden to use their property for this noxious purpose when washing for hire, are thereby deprived of it "without due process of law."

So also the fact that this Act provides that no laundries shall be maintained in a wide extent of barren, unpopulated land west of this town is no argument for the assertion that the defendant whose laundry is within the populated portion of prescribed area has been deprived of his property "without process of law." In other words, the fact that the Act in some respects is not as effectual as it might have been made, and the fact that in other respects it is far more sweeping than any apparent reason would justify, furnish no ground for declaring it unconstitutional, it being in the wisdom of the Legis-

lature the exercise of the conceded police power of the State over the Kingdom and its citizens.

The judgment of the Police Court is affirmed.

Hon. W. N. Armstrong, Attorney General, and Mr. E. Preston, Deputy Attorney General, with him, for the Crown; Messrs. Castle & Hatch for defendant.

Honolulu, December 27, 1880.