## STATE OF HAWAII *v.* RICHARD TAYLOR.

### No. 4529.

April 4, 1967.

RICHARDSON, C.J., CASSIDY, WIRTZ,
LEWIS AND MIZUHA, JJ.

OPINION OF THE COURT BY LEWIS, J.

On defendant-appellee's motion the charge against him, based on R.L.H. 1955, § 142-27, was dismissed by the district magistrate on the ground that the statute is unconstitutionally vague. The State appealed on points of law.

We first consider the State's contention that: "The District Magistrate does not have the power to decide the constitutionality and binding effect of section 142-27, Revised Laws of Hawaii, 1955." This contention is based on R.L.H. 1955, § 213-7, which provides:

"213-7. Constitutional questions. The several courts of record shall have power to decide the constitution-

ality and binding effect of any law, ordinance, rule, regulation, order or decree, enacted or issued by the legislature or by any executive officer, department, board or bureau."

The same contention was presented in *Territory* v. *Field*, 23 Haw. 230, 231, in which defendant had been adjudged guilty and appealed. The court merely pointed out that "even if the district courts have no power to pass upon the constitutionality of statutes or ordinances, a thing we are unable to concede, yet, in this case, if the ordinance in question is invalid because violative of constitutional inhibitions and the appellant is in position to complain thereof, the ordinance would be declared a nullity by this court, and the judgment below being void it could be reversed on this appeal." In similar situations— appeals from district courts by defendants adjudged guilty —the court in *Territory* v. *Cunha,* 15 Haw. 607, *Territory* v. *Schaefer,* 19 Haw. 214, *Territory* v. *Kraft,* 33 Haw. 397, *Territory* v. *Merseberg,* 35 Haw. 248, and *Territory* v. *Naumu,* 43 Haw. 66, reviewed without comment the constitutionality of the statutes and ordinances involved. In *Territory* v. *Wong,* 40 Haw. 257, as in the present case, the charge was dismissed and the prosecution appealed, but in *Wong* no attack was made on the authority of the magistrate, and the constitutionality of the statute again was reviewed without comment. As recently as the 1966 session of the legislature we find a district court ruling of unconstitutionality of an act[1] given as the basis of a declaration of urgency. S.L. 1966, c. 44.

R.L.H. 1955, § 213-7, *supra,* prior to the amendment made by S.L. 1903, c. 32, was S.L. 1892, c. 57, § 6, reading as follows:

"Section 6. The several Courts of Record shall

---

[1] The decision referred to was appealed to this court and is *State* v. *Willburn,* No. 4552 on our docket.

have power to decide for themselves the constitutionality and binding effect of any law, ordinance, order or decree, enacted or put forth by the Sovereign, the Legislature, the Cabinet, the Privy Council or any executive board or bureau of the Government. The Supreme Court shall have the power to declare null and void any such law, ordinance, order or decree as may, upon mature deliberation, appear to it to be contrary to the Constitution, or opposed to the law of Nations, or any existing treaty with a foreign power; provided, that such decision shall be rendered in open Court after the parties interested shall have had an opportunity to be heard thereon."

As thus enacted in 1892, the section was substantially the same as a predecessor provision, section 824 of the Civil Code of 1859, the principal difference being that the proviso at the end of the 1892 section was not contained in the 1859 provision.

When the statute is considered against this background it appears that its purposes originally were, *first* to distinguish between the power of the Supreme Court, which when exercised was binding on all courts, and the power of other courts of record, which was merely "to decide for themselves" but not to bind any other court; and *secondly,* to expressly declare that the invalidation of a law as being contrary to the Constitution lay within the judicial power, this being a doctrine of American origin[2] which it evidently was thought prudent to enunciate as a doctrine obtaining in the Kingdom of Hawaii. On the latter point, the section was cited in *The King* v. *Tong Lee,* 4 Haw. 335, 343 (1880); *The King* v. *Young Tang,* 7 Haw. 49, 61 (1887); and *Maka* v. *Ah Fai,* 3 Haw. 631, 634 (1875). The point could hardly have been in doubt, since it was

[2] Thayer, *American Doctrine of Constitutional Law,* 7 Harv. L. Rev. 129.

provided in the several constitutions of the Kingdom, beginning with the Constitution of 1852, that laws enacted contrary to the Constitution "shall be null and void."[3]

On the first point—the differentiation between the power of the supreme court and the powers of other courts of record—the statutory provision likewise was unnecessary, and this feature has been eliminated by the shortened version which has been law since the 1903 amendments (S.L. 1903, c. 32).

In speaking only of courts of record when enunciating the doctrine that the invalidation of a law as unconstitutional lies within the judicial power, the statute did not go so far as to prohibit the exercise of this power by courts not of record, such as the district courts.[4] The State invokes the maxim *expressio unius exclusio alterius,* but that maxim is only one of the aids to construction. See 2 Sutherland, *Statutory Construction,* § 4917 (3d ed.); 50 Am. Jur., *Statutes,* § 245. Upon consideration of other factors we conclude that it is inapplicable here.

As will appear, at common law the judges of inferior courts not of record, commonly known as justices of the peace, had the power to pass upon the constitutionality of statutes and ordinances coming before them. Statutes in derogation of the common law are strictly construed,[5] and a court should not, merely by application of the maxim *expressio unius exclusio alterius,* find that the common law has been superseded in the area not mentioned by a statute, where it does not appear that it was the legisla-

---

[3] Const. of 1852, art. 103; Const. of 1864, art. 78; Const. of 1887, art. 79; *cf.,* Const. of 1894, art. 91.

[4] The district courts are not courts of record. *Cf., Republic* v. *Kanalo,* 11 Haw. 435, 439; *Republic* v. *Yamane,* 12 Haw. 189, 196; *Carter* v. *Gear,* 16 Haw. 242, 246, *aff'd,* 197 U.S. 348; *Ferreira* v. *Kamo,* 19 Haw. 187, 189.

[5] *Lucas* v. *Redward,* 9 Haw. 23, 25; *Rathburn* v. *Kaio,* 23 Haw. 541, 545; *Akai* v. *Lewis,* 37 Haw. 374, 379; *cf., Minneapolis Fire & Marine Ins. Co.* v. *Matson Nav. Co.,* 44 Haw. 59, 62, 352 P.2d 335, 338.

tive purpose to supersede the common law. *Gabriel* v. *Margah,* 37 Haw. 571, 574; 2 Sutherland, *Statutory Construction,* § 4916 at 417-18 (3d ed.) ; 3 *id.* §§ 6201-02.

The intention of the legislature in regard to the enactment under consideration appears from section 919 of the Civil Code of 1859, in the light of which it must be interpreted though section 919 is no longer in effect, there being nothing to indicate that the 1892 or 1903 enactments, above cited, expressed a change of legislative intention with regard to the power of district courts to pass on the constitutionality of statutes and ordinances. In this connection, it is significant that the cases of *The King* v. *Tong Lee, supra,* 4 Haw. 335, and *The King* v. *Young Tang, supra,* 7 Haw. 49, were decided in 1880 and 1887 respectively, and were appeals from police courts on points of law, hence based on the assumption that the inferior court in each instance had passed on the point.[6]

Section 919 of the Civil Code of 1859 provided that: "Every district justice shall have all the necessary powers in and for the administration of justice, in all cases coming within his jurisdiction." When this statute is considered with the statute now under construction, the provisions of which at that time were set out in section 824 of the Civil Code of 1859, it appears that the authority of a district court to pass upon the validity of a statute or ordinance coming before it for enforcement was left to judicial determination in the light of the common law. Pursuant to R.L.H. 1955, § 1-1, we look to the common law "as ascertained by English and American decisions."

As stated in *Trammell* v. *Town of Russellville,* 34 Ark. 105, 110, speaking of a mayor empowered to act in a judicial capacity:

> "The enforcement of the ordinances of the town was

---

[6] See *Republic* v. *Kanalo,* 11 Haw. 435, 437-38 (opinion of Judd, C.J.) ; *Adams* v. *Klein,* 38 Haw. 346, 349.

> a duty imposed upon him by the statute, and the validity of the ordinance was a question he had the unquestionable power to pass upon."

Again, in *Bohri* v. *Barnett,* 144 Fed. 389, 391 (7th Cir.), speaking of a justice of the peace of Wisconsin, vested with jurisdiction to punish violations of municipal ordinances, the court said:

> "* * * Whether the ordinance in question was a valid ordinance, or was not a valid ordinance, was one of the questions raised by the case, the determining of which was within his jurisdiction. * * * Every question, from the validity of the ordinance to the identity and guilt of the man standing at bar, was a question before the magistrate; was within his duty to hear and determine; and was therefore within the general jurisdiction of his court."

*Accord: Brooks* v. *Mangan,* 86 Mich. 576, 49 N.W. 633, 634, which explains *Ortman* v. *Greenman,* 4 Mich. 290. It is noteworthy that *Ortman* was construed in the later case, not as impeaching the authority of the magistrates to hold statutes unconstitutional, but only as admonishing the magistrates to exercise great caution in doing so.

In 1 Cooley, *Constitutional Limitations,* pp. 337-38, note 1 (8th ed.), the author after commenting on *Ortman* v. *Greenman,* continues:

> "* * * Undoubtedly when the highest courts in the land hesitate to declare a law unconstitutional, and allow much weight to the legislative judgment, the inferior courts should be still more reluctant to exercise this power, and a becoming modesty would at least be expected of those judicial officers who have not been trained to the investigation of legal and constitutional questions. But in any case a judge or justice, being free from doubt in his own mind, and unfettered by any judicial decision properly binding upon him, must

follow his own sense of duty upon constitutional as well as upon any other questions."

As stated in 16 C.J.S., *Constitutional Law,* § 93b, pp. 303-05, speaking of inferior courts:

"* * * The exercise of such power [to pass on the validity of a statute and declare it unconstitutional] * * * should be carefully limited, and avoided if possible, and, unless it appears clearly beyond a reasonable doubt that the statute is unconstitutional, it is considered the better practice for the court to assume that it is constitutional until the contrary is declared by a court of appellate jurisdiction * * *. In a proper case, however, the court should not hesitate to determine the constitutionality of a statute, if this be necessary. * * *."

We fully agree with the remarks above quoted. We also direct attention to the recognition in the fourth edition of Cooley on Torts, of the modern rule which makes no distinction between courts of superior or general jurisdiction and courts of inferior or limited jurisdiction in respect of judicial immunity, the dilemma encountered under the former rule by inferior judicial officers called upon to act under a law which ultimately might be struck down, upon which Mr. Cooley earlier had remarked, being thus resolved. 2 Cooley, *Torts,* § 315, pp. 442, 446. See Annot., 13 A.L.R. 1344, 55 A.L.R. 282, 173 A.L.R. 802.

While the modern rule as to the immunity of judges of courts of limited jurisdiction was noted in *Gomez* v. *Whitney,* 21 Haw. 539, 547, and *Leong Yau* v. *Carden,* 23 Haw. 362, 366, this court has not squarely overruled *Alau* v. *Everett,* 7 Haw. 82, and *Hang Lung Kee & Co.* v. *Bickerton,* 4 Haw. 584, 588. We do so now, and adopt the modern rule. It would be idle to admonish the district magistrates to exercise caution in declaring a statute or ordinance unconstitutional if they were subject to a damage

suit should the statute or ordinance in question eventually be struck down. That point must be set at rest.

We come now to the merits. The statute on which the charge was based, R.L.H. 1955, § 142-27, reads as follows:

"§ 142-27. Goods on street or wharf. No person shall place, leave or deposit in any street, lane or alley, or upon any side or crosswalk, or upon any public wharf in the city of Honolulu, or in the towns of Lahaina, Hilo, Wailuku or Kahului, any goods, wares or merchandise, or any substance or material whatever, except as permitted by law."

Pursuant to R.L.H. 1955, § 142-31, the penalty is a fine of not less than $5 or more than $25 for each offense.

Defendant-appellee was charged as follows:

"That Richard Taylor, in the District of Honolulu, State of Hawaii, on or about August 9, 1965, did place, leave or deposit upon a sidewalk goods, wares or merchandise in violation of Section 142-27, Revised Laws of Hawaii, 1955."

Defendant attacked the statute on its face and as applied to him, invoking the due process and equal protection clauses of the 14th Amendment, and sections 4, 6, and 20 of Article I of the State Constitution. The magistrate struck down the statute as being "vague and unenforceable." We disagree.

This statute is not a "loitering" statute. It does not purport to interfere with the free use of the sidewalks by persons themselves, apart from the deposit of goods by such persons. Such a personal right was vindicated in *Territory* v. *Anduha*, 31 Haw. 459, *aff'd*, 48 F.2d 171 (9th Cir.), upon which defendant strongly relies. Because a "loitering" statute is susceptible of application in such manner as to infringe upon first amendment rights, such a statute is subject to special scrutiny and must be narrowly drawn, as illustrated by *Shuttlesworth* v. *Birmingham*, 382 U.S.

87, 91, also cited by defendant. *Cf., Territory* v. *Scruggs,* 43 Haw. 71. However, even when first amendment rights are involved, a statute is valid which is aimed at conduct of a limited kind, the regulation or prohibition of which lies within the police power. *Adderley* v. *Florida,* 385 U.S. 39.

What right does defendant seek to vindicate? As seen, his personal freedom in the use of the sidewalk is not infringed. He does not have a constitutional right to bring along a table and chair and take up occupancy. If he could do that others could also, and the sidewalks of the city would not serve their purpose. The legislature evidently deemed it advisable to prohibit altogether, unless specifically allowed for good reason, the placing, leaving or depositing of goods, wares or merchandise on the sidewalks and other parts of the streets in the named cities and towns.

Unlike the coverage of the statute in *Anduha, supra,* the coverage of this statute is limited to urban areas. The legislative purpose, as stated in the title of the original act, S.L. 1886, c. 65, was to prevent the obstruction of the streets of the named cities and towns. Each prohibited act was regarded by the legislature as creating an obstruction, as appears from R.L.H. 1955, § 142-32, which provides for a notice of violation of section 142-27, for an additional penalty thereafter, and for payment by the violator of the cost of removing the "obstruction" if it is removed by the City after twenty-four hours. It was not necessary that the legislature require that it be found as a fact that the particular act did, in and of itself, create an obstruction[7], the statute being restricted to urban areas which presumably are congested. *Cf., Territory* v. *Scruggs, supra,* 43 Haw. 71, 75.

The district magistrate invalidated the statute on the

[7] Compare R.L.H. 1955, §§ 267-4 and 267-6.

ground of "the absence of any standard by which to measure the act condemned, such as purpose or duration or volume." Defendant argues that the statute could be applied to a man putting down a suitcase while waiting for a taxi. While defendant's contention, as stated in his brief, is that the statute is "vague and ambiguous and contains no ascertainable standard of conduct," upon oral argument it appeared that the contention primarily is one of overbreadth. The statute leaves too much to the enforcement officers and is susceptible of unconstitutional discrimination as in *Anduha*,[8] it is contended.

Defendant contends that the trend is against the narrowing of a statute to permissible limits by "judicial legislation," but we do not find this contention supported,[9] at least where as here no first amendment rights are involved. We are free to give a common sense interpretation to the statute. As stated in *United States* v. *Standard Oil Co.*, 384 U.S. 224, 225-26, in holding that a statutory ban on the discharge into a river of "any refuse matter of any kind or description" included commercially valuable aviation gasoline escaping into the river:

> "* * * But whatever may be said of the rule of strict construction, it cannot provide a substitute for common sense, precedent, and legislative history. We cannot construe [the statute] in a vacuum. Nor can we read it as Baron Parke would read a pleading."

In *Territory* v. *Wong, supra*, 40 Haw. 257, 259-60, in holding that being "present" at a gambling game refers to intentional presence with knowledge that the game constitutes gambling, this court said:

---

[8] *Territory* v. *Anduha, supra*, 31 Haw. 459, *aff'd*, 48 F.2d 171.

[9] It of course is true that a conviction obtained under a broad construction of a statute cannot be saved by a narrow construction later placed upon the statute by the appellate court. *Ashton* v. *Kentucky*, 384 U.S. 195, 198; *Shuttlesworth* v. *Birmingham, supra*, 382 U.S. 87, 92.

"To accord a constitutional interpretation of a provision of broad or apparent unrestricted scope, courts will strive to focus the scope of the provision to a narrow and more restricted construction. * * *.

"Provisions of a penal statute will be accorded a limited and reasonable interpretation under this doctrine in order to preserve overall purpose and to avoid absurd results. (R.L.H. 1945, §§ 12, 13)[10] * * *"

And in *State* v. *Prevo,* 44 Haw. 665, 679-80, 361 P.2d 1044, 1052, in holding that our gambling statute is not unconstitutionally vague we said:

"A statute will not be held unconstitutional by reason of uncertainty if any sensible construction embracing the legislative purpose may be given it. Mere difficulty in ascertaining its meaning, or the fact that it is susceptible to interpretation will not render it nugatory. *Adams* v. *Greene,* 182 Ky. 504, 206 S.W. 759."

The words "place, leave or deposit" are the key words in the statute. To "leave" is to go away from an article after putting it down, beyond sight, hearing, and reasonably immediate reach. *Cf., Munroe* v. *Hartford St. Ry.,* 76 Conn. 201, 205, 56 Atl. 498, 500. To "place" means to affix, since the word here is used in addition to "deposit" and signifies something other than "deposit."[11] *Cf., York Ice Machinery Corp.* v. *Kearney,* 344 Pa. 659, 662, 25 A.2d 179, 180. This is confirmed by reference to sections 142-28 and 142-29, where "place" is used in the sense of "affix,"

---

[10] Sections 12 and 13 of the Revised Laws of Hawaii 1945, cited in *Wong,* have been repealed and the provisions incorporated in R.L.H. 1955, § 1-18 (b) and (c), quoted in note 14.

[11] "It is a cardinal rule of statutory construction that the courts are bound, if possible, to give effect to all of its parts, and no sentence, clause or word shall be construed as unmeaning or surplusage if a construction can be legitimately found which will give force to and preserve all the words of the statute." *In re Pringle,* 22 Haw. 557, 564.

these sections being *in pari materia*.[12] As to the word "deposit," it imports deliberation. Further light is shed on its meaning by application of the rule *noscitur a sociis*,[13] and by taking into consideration the object of the statute.[14] It thus appears that the words "place, leave or deposit" all import the doing of something unrelated to the ordinary use of the sidewalk, it being the object of the statute to preserve the ordinary use of the sidewalk by suppressing the unrelated acts.[15]

When the statute is so interpreted defendant's argument that it is unconstitutionally vague comes to the fore. This argument will now be considered. As stated in *Boyce Motor Lines* v. *United States*, 342 U.S. 337, 340-41, in upholding a regulation which required avoidance of driving of flammables through congested thoroughfares "so far as practicable":

"A criminal statute must be sufficiently definite to give notice of the required conduct to one who would avoid its penalties, and to guide the judge in its appli-

---

[12] R.L.H. 1955, § 1-21, provides that laws *in pari materia* shall be construed with reference to each other, and that: "What is clear in one statute may be called in aid to explain what is doubtful in another."

[13] Under this rule the meaning of particular terms in a statute may be ascertained by reference to words associated with them where of the same kind. 50 Am. Jur., *Statutes*, § 247; 2 Sutherland, *Statutory Construction*, § 4908 (3d ed.). The rule is explained in *Territory* v. *Honolulu Rapid Transit & Land Co.*, 23 Haw. 387, 393, where however the rule was deemed inapplicable. *Cf.*, *State* v. *Prevo*, *supra*, 44 Haw. 665, 674, 361 P.2d 1044, 1050; *Hodgerney* v. *Baker*, 324 Mass. 703, 88 N.E.2d 625, 627.

[14] R.L.H. 1955, § 1-18, provides that where the words of a law are ambiguous:

"(b) The reason and spirit of the law, and the cause which induced the legislature to enact it, may be considered to discover its true meaning.

"(c) Every construction which leads to an absurdity shall be rejected."

[15] As above appears, the statute contains the phrase "except as permitted by law." Exceptions are set out in chapter 142, beginning with section 142-33, and other exceptions may have been made by ordinance pursuant to R.L.H. 1955, § 149-86(2) and (48).

cation and the lawyer in defending one charged with its violation. But few words possess the precision of mathematical symbols, most statutes must deal with untold and unforeseen variations in factual situations, and the practical necessities of discharging the business of government inevitably limit the specificity with which legislators can spell out prohibitions. Consequently, no more than a reasonable degree of certainty can be demanded. Nor is it unfair to require that one who deliberately goes perilously close to an area of proscribed conduct shall take the risk that he may cross the line.

"In *Sproles* v. *Binford,* 286 U.S. 374 (1932), these principles were applied in upholding words in a criminal statute similar to those now before us. Chief Justice Hughes, speaking for a unanimous court, there said:

' "Shortest practicable route" is not an expression too vague to be understood. The requirement of reasonable certainty does not preclude the use of ordinary terms to express ideas which find adequate interpretation in common usage and understanding. * * * The use of common experience as a glossary is necessary to meet the practical demands of legislation.' "

Resort to common understanding and practices as the standard in a penal statute is not proscribed as shown by the foregoing, and by such cases as *Roth* v. *United States,* 354 U.S. 476, 491, which established the federal obscenity doctrine, and *United States* v. *Petrillo,* 332 U.S. 1, 7-8, which held that a penal statute was not unconstitutionally vague because couched in terms of "the number of employees needed." In the latter case the court said:

"* * * The language here challenged conveys sufficiently definite warning as to the proscribed conduct when

measured by common understanding and practices. The Constitution requires no more."

So also in *Omaechevarria* v. *Idaho,* 246 U.S. 343, 348, a statute was sustained which prohibited the grazing of sheep "upon any range usually occupied by any cattle grower" though the statute did not set out what length of time would constitute a "usual" occupation.

It repeatedly has been held that "statutes are not automatically invalidated as vague simply because difficulty is found in determining whether certain marginal offenses fall within their language," and that: "Void for vagueness simply means that criminal responsibility should not attach where one could not reasonably understand that his contemplated conduct is proscribed." *United States* v. *National Dairy Corp.,* 372 U.S. 29, 32-33. *Accord: Roth* v. *United States, supra,* 354 U.S. at 491; *United States* v. *Petrillo, supra,* 332 U.S. at 7; *Robinson* v. *United States,* 324 U.S. 282, 286. The cases cited by defendant have been carefully considered, but we deem them distinguishable.

We are of the opinion that the district magistrate demanded too much when he ruled that the statute must be specific as to the purpose, duration or volume of the act condemned. Custom and usage as to the ordinary use of the sidewalk supply the standard.[16] The statute does not apply to the man putting down his valise while waiting for a taxi, or the woman putting down her bag of groceries while waiting for a bus. As to volume, it perhaps should be noted that only something substantial is within the legislative contemplation—this not a "litterbug" statute.

The exact meaning of the phrase "goods, wares or mer-

---

[16] It is not necessary for us to decide whether the standard of custom and usage is sufficient insofar as the statute may be applied to the streets themselves, as distinguished from the sidewalks. These two objects of the statute are severable, and the validity of the one does not turn upon the validity of the other. *Cf., Territory* v. *Tam,* 36 Haw. 32, 41; *Territory* v. *Hoy Chong,* 21 Haw. 39, 42-43; *Territory* v. *Sing High,* 19 Haw. 628, 629; *Territory* v. *Cunha, supra,* 15 Haw. 607, 609.

chandise" need not be determined at this time, other than to comment on the contention made by defendant in response to the court's request for supplemental briefing on the point, defendant's contention being that this phrase applies only to property held or to be used for sale. We do not agree. *Cf., Von Cotzhausen* v. *Nazro,* 15 Fed. 891, 899 (E.D. Wis.) ; *Bassett* v. *City of Boston,* 226 Mass. 64, 114 N.E. 1035; 38 C.J.S. 944. If defendant's contention were correct then the exception made by R.L.H. 1955, § 142-34, allowing abutters, under certain conditions, to leave on the sidewalk for three hours "goods, wares or merchandise" being received or delivered, would be limited to the stock in trade of merchants to the exclusion of the necessary supplies and equipment of a different type of business. This would not be reasonable.

Upon oral argument defendant contended that many other persons have done exactly the same thing as defendant and have not been prosecuted. However, we are not now confronted with any question as to the constitutionality of the application of the statute to defendant. We have confined ourselves to the point of law decided by the magistrate. It particularly is to be noted that on remand of the case the sufficiency of the charge in the light of *Territory* v. *Kanda,* 41 Haw. 591, 594-96, will be an open question.

Reversed and remanded for further proceedings.

*Victor Agmata, Jr.,* Deputy Prosecuting Attorney, City and County of Honolulu (*John H. Peters,* Prosecuting Attorney, with him on the brief) for the State, appellant.

*Harriet Bouslog* (*Bouslog & Symonds* of counsel) for defendant, appellee.