## Board of·Education of Louisville, Kentucky v. Sea, Tax Receiver, et al.

(Decided January 18, 1916.)

### Appeal from Jefferson Circuit Court (Common Pleas Branch Second Division).

1.  Statutes—Construction—Repeal.—Repeals of statutes by implication are not favored, and when the two laws can be reconciled and a construction be reached by which each of them may be harmonized and read together, courts will adopt the harmonizing construction and allow each of them to stand.

2.  Schools and School Districts—Chapter 2 of Acts of 1910.—Chapter 2 of the Acts of 1910, being ."An Act to amend the school laws and to create Boards of Education, and to define their duties in

cities of the first class," did not repeal section 2997, Kentucky Statutes, 1915 edition, but said section remains in full force and effect as a part of the general school laws of the State of Kentucky, as applicable to cities of the first class.

3.  Statutes—Contemporaneous Construction.—The rule of contemporaneous construction by the Legislature of any part of the Constitution, will be given no weight by the courts in construing that instrument, if the language to be construed therein is plain and unambiguous, but if the language is susceptible of more than one possible interpretation, a long and continuous construction by the Legislature will receive by the courts some weight and some consideration when called upon to construe the language in dispute.

4.  Constitutional Law—Construction.—The rule that courts will ascertain the spirit of a Constitution and will deny the validity of any act supposed to violate any spirit pervading the Constitution, is not a rule of interpretation in this State.

5.  Taxation—Discounts or Rebates.—Under section 171 of the Constitution, it is competent for the Legislature to authorize the tax collecting agencies to allow, by due enactment, discounts, or rebates, within reasonable limitations, to the tax payer as an inducement for him to pay his taxes before they become due, and this privilege, when extended to all, does not violate the uniformity of taxes provided for in said section.

6.  Taxation—Discounts or Rebates.—To authorize and allow such rebates, or discounts, is not "devoting" taxes levied or collected for one purpose to that of another purpose, as is forbidden by section 180 of the Constitution.

7.  Schools and School Districts—Rebates and Discounts in Collection of Taxes for School Purposes.—To authorize and allow such rebates and discounts, in the collection of taxes for school purposes is not a misappropriation of any sum "produced for such purpose," as is denounced by section 184 of the Constitution, the allowing of the rebates, or discount, being a part of the collection of the taxes, which collection is a part of the means by which the taxes are produced, as much so as is the levying of the taxes.

AUTHER M. RUTLEDGE for appellant.

PENDLETON BECKLEY and STUART CHEVALIER for appellees.

OPINION OF THE COURT BY JUDGE THOMAS—Affirming on appeal and reversing in cross-appeal.

This suit was filed on December 13, 1915, by the appellant Board of Education of Louisville, Kentucky, against the appellee as tax receiver of said city, seeking to compel him, as such tax receiver, to not allow any discount upon taxes levied for school purposes in said city to any taxpayer therein, regardless of the time that any such taxes might be paid; and to compel him

to not allow any discount upon any of the taxes levied strictly for municipal purposes, unless such taxpayer would at the time also pay his school tax to the limit of the levy and without any discount thereon. Appellee filed a demurrer to the petition, which was overruled, and upon submission, the court adjudged to appellant the relief first sought above, and denied to it the second relief sought; and a judgment was rendered awarding the process necessary to effectuate the judgment of the court. From the adverse judgment against it, the appellant prosecutes this appeal, and the appellee prosecutes a like appeal from the judgment against him as such tax receiver.

Prior to the act of 1910, which is entitled: "An act to amend the school laws and to create boards of education and to define their duties in cities of the first class," as found in the volume of acts of 1910, the common school system in the city of Louisville, it being a city of the first class, was governed and administered in accordance with the act of the Legislature of July 1, 1893, and amendments thereto, which act is a part of the charter of cities of the first class. The common schools of the city were always a part of, and under the general supervision of, the common school system of the State, but the municipality under the charter act, *supra,* was made the local agent of the State for the purpose of carrying into execution locally the policy of the State in providing for free public schools in such city. The general supervision of such schools under the charter of the city was vested in a board of education, which the law incorporated, and which was composed of fourteen members. Conceiving that the interest of the school children, and the general utility of the schools, could be enhanced by alterations made in the membership of the board of education, as well as the method by which they should be selected, and possibly for the purpose of correcting some minor evils, the act of 1910, *supra,* was enacted. By that act the membership of the board of education was reduced from fourteen members to five members, and instead of they being elected by wards, they were elected by the voters at large and from the city at large.

In referring to the act of July 1, 1893, and its amendments, we shall do so under the head of "the old act,"

and in making reference to the act of 1910, we shall use the phrase, "the new act."

Under the old act the city by its general council was empowered and authorized by ordinance to levy an ad valorem tax on all real estate and personal estate "for school purposes" not exceeding fifty cents on each one hundred dollars of taxable property therein. (Section 2980, Ky. Statutes), and by section 2981, Kentucky Statutes, it being part of the old act, the city was compelled to make a "levy for schools," as well as the various municipal purposes therein specified.

Sub-sections 24 and 25 of section 2978a of Kentucky Statutes, Edition of 1915, the same being a part of the new act, are as follows:

"24. Money May Be Borrowed. The board shall have power to borrow money on the credit of the board in anticipation of the revenue from school taxes for the fiscal year in which the same is borrowed, and to pledge said school taxes for the payment of the principal and interest of said loan: Provided, That the interest paid shall in no case exceed six per cent. per annum and the principal shall in no case exceed fifty per cent. of the anticipated revenue."

"25. Tax Levy. To raise money for the maintenance of the schools the general council shall annually cause to be levied and collected a tax of not less than thirty-six cents (.36) on each one hundred ($100.00) dollars of property assessed for taxation for city purposes. Upon the completion of the assessment of property for taxation, the amount levied as above shall annually be passed to the credit of the school fund, upon the books of the city, and the said amount as collected, shall be paid over to the board by the treasurer of the city, in regular monthly installments, the first payment to be made within one week after the collection of said amount shall have been commenced and the other payments to be made weekly thereafter in current money by the said treasurer as collected."

It will be observed that under sub-section 25 that instead of there being a maximum limit for the tax levy in the sum of fifty cents on the one hundred dollars of property, the minimum rate provided is thirty-six cents on each one hundred dollars of property which the city shall levy and collect for school purposes. Under the old act such collections are made by the city through

its tax receiver, from the books made out by the assessor, and which must be delivered to him by January 3, of each year, and the taxes are made due on May 1, of each year.

In the new law there is nothing said upon these subjects except in so far as sub-section 28 thereof may relate thereto, it being as follows:

"All officers of any city of the first class, and of the State, concerned with the assesment and collection of taxes, fines and penalties shall perform such duties relating to the levying and collection of school taxes and the collection of such fines and penalties, and upon the payment thereof to said board for school purposes, as are now imposed by the existing laws upon such officers in relation to the levy and collection of school taxes and the collection of fines and penalties payable to the school funds; and nothing in this act, unless inconsistent therewith, shall be construed as repealing any existing law providing for the assessment and collection of school taxes in such city; and all powers and duties conferred by existing laws upon any board in relation thereto shall be continued in the board creating this act."

Section 2997 of the Kentucky Statutes, being a part of the old law, is as follows:

"2997.   Tax Bills Listed With Receiver.—Discounts for Prompt Payment.   The assessor shall make out the tax bills, and shall list such bills for collection with the tax receiver by the third day of January following, or as soon thereafter as practicable; and such taxes shall then be payable at the tax receiver's office.   Those paid in January or the first ten working days of February shall be reduced by a discount of three per cent., and those paid in the rest of February by two per cent., and those paid in March by one per cent."

It is now claimed by appellant in this suit and is the basis thereof, that under sub-section 25, of the new act, *supra,* that it has the right to demand of the city to levy and pay to it the taxes levied for school purposes so as to produce a net sum which the levy rate would make if it was all collected, and without the deductions of any discounts or rebates allowed to the taxpayer for facilitating the payment of the taxes, as is provided by section 2997, *supra,* and which was the method provided for the collection of such taxes continuously since the

enactment of the old act, and long prior thereto, extending through a period antedating the present Constitution of this Commonwealth. This contention is insisted upon, because it is claimed that section 2997 is repealed or superseded by the new act, and that said section constitutes no part of the present law pertaining to the levying and collection of school taxes in the city, and that inasmuch as the authority of the city is circumscribed by section 25 of the new act, *supra,* it has no authority at this time to allow any discounts to any taxpayer of school taxes within its limits, and must account to appellant for the full 36 cents levy rate. This contention is sound if section 2997 has in any manner been superseded; and the first question for determination is whether this contention of appellant is tenable.

The last section of the new act, and which is section 38 thereof, is as follows:

"The general school laws of this State and all laws and parts of laws applicable to the general system of common schools in a city of the first class and not inconsistent herewith, shall be in full force and effect in such city."

It is therein seen that no existing law relative "to the general system of common schools in a city of the first class," is repealed by the act, unless such law be "inconsistent" with the new act; but all such laws which are not "inconsistent" with the new act are to remain in full force and effect in such city. In section 28, *supra,* of the new act, we find as a part thereof that "nothing in this act, unless inconsistent therewith, shall be construed as repealing any existing law, providing for the assessment and collection of school taxes in such city."

We are unable to see in the light of these provisions of the new act that section 2997, *supra,* of the Kentucky Statutes is in any manner affected by the new act. The former is not in any particular inconsistent with any of the provisions of the latter. In the one, provision is made for not only the collection of the school taxes, but for the facilitating of the payment of that tax before it is due by the inducement offered of the discount allowed. And section 28 of the new act is broad enough and, as a matter of fact, does incorporate into it section 2997. Section 25 of the new act provides the minimum rate which may be levied or collected and is silent as to *how* the taxes shall be collected, but the inference is that

·it·shall be·collected ·as it had theretofore been or by ·such ·means ·as were already provided by law for that purpose, and which means are the ones provided in·section 2997, wherein·the discounts therein provided for are ·allowed. So that the apparent peremptory or mandatory language in section 25 of the new act, as to·the ·net amount which ·the city shall raise for school·purposes, is qualified by section 2997.

There is no constitutional provision either as to a maximum or a minimum rate of taxes which may be levied by such city for school purposes, and these mat- ·ters are governed and controlled by legislative act only. It·is perfectly competent for the Legislature to·qualify ·one section of an act by·another section, or to qualify one law·by the enactment of another—the one being ·read·in·connection with the other. . Besides, we see noth- ing in section 2997 inconsistent with any of the sections ·of the new act, and, according to the last section thereof, ·if the then existing law in regard to public schools, in cities of ·the first class, are not inconsistent with any of the provisions of the new act, the pre-existing law remains in force, and shall be read in connection with the new act in making one harmonious whole and complete .system of laws upon the subject. Moreover, repeals by implication are not favored and it is always the effort of the courts to read together and uphold, if possible, various acts of the Legislature applicable to any given subject, rather than to declare some of them repealed by the enactment of later cases. We know of no authority to the contrary, and will refer to the comparatively .recent case of Taylor v. Russell, 117 Ky., 539, wherein this court announced the rule as follows:

"Such construction is not to be favored, and will not be adopted when any other consistent construction will .allow both to stand. The legislative purpose, if any doubt arises upon the language employed in the acts, will be looked to, rather than the mere dates of enactments, as the guide in construction. The import of the acts in question, viewed in connection with the general state of the law, and the history of the legislation, and .previous judicial utterances, if any, upon the subject, are all legitimate and helpful means of arriving at the legislative purpose in the enactment of statutes which may appear to be inconsistent in terms or means provided."

We conclude then that section 2997 of the Kentucky Statutes was not repealed by the new act, and that the city of Louisville, through the appellee as its tax receiver, has the authority to allow the discounts specified in said section for the purpose of facilitating, and as an inducement to, the payment of the school taxes before they are due, unless the Legislature is prevented from granting any such authority by some constitutional provision.

The views which we have taken do not militate in the least against the doctrine laid down in the authorities to which appellant refers us of County School Commissioners, &c. v. Gantt, 73 Md., 521; and 35 Cyc., pages 1045-46. The facts were essentially different in the Maryland case from what they are here. We are not advised that the power to levy and collect as given by the legislature, therein expressly permitted any discounts, or that the amount of the levy rate was permitted to be reduced in any manner by the allowance of any discount. The Legislature in the instant case, could have fixed, in section 25 of the new act, a less rate than thirty-six cents, but instead of so doing, it fixed that rate, subject to be reduced by whatever discounts which might be allowed, and which discounts it provided for, and did not leave the authority to fix these to the city, and by which provision the Legislature authorized the rate so fixed to be reduced by whatever sum that might be allowed to the taxpayer in the way of discounts. The same might be said as to the total of the school fund, which might be placed to the credit of appellant on the books of the city. The same act authorizing and permitting this to be done, or rather the same power (the Legislature), authorized and permitted this sum to be reduced by the discounts.

The quotation from Cyc., by appellant in its brief, does not recognize the fact that the discounts were allowed to be made under authority of the Legislature conferring the power to levy, and collect the tax, but seems to be based exclusively upon the idea that the municipality charged with the duty of levying and collecting the taxes was without any legislative authority to permit any rebates, and upon its own initiation allowed them. Such a course, if true, was manifestly irregular and illegal, and would be so in this State, but

we are not dealing, as we have seen, with any such conditions.

The doctrine laid down in the case of Hall. v. Ballard County, 140 Ky., 84, and other like cases, does not militate against these views. It is therein determined that the sheriff should not be allowed any commission for collecting the school fund. The question as to what constitutes the *collected* school fund is not presented in any of these cases, nor is it considered.

Going now to the question as to whether the Legislature can authorize these discounts under the Constitution, we find that it is claimed that sections 180 and 184 of that instrument forbids such authority to be exercised by the Legislature. The said sections are as follows:

"180.    Every act enacted by the General Assembly, and every ordinance or resolution passed by any county, city, town or municipal board or local legislative body, levying a tax shall specify distinctly the purpose for which said tax is levied, and no tax levied and collected for one purpose shall ever be devoted to another purpose."

"184.    The interest and dividends of said (school) fund, together with any sum which may be produced by taxation or otherwise for purposes of common school education, shall be appropriated to the common schools, and to no other purpose."

It is claimed that such authority is denied to the Legislature by section 180, in that to permit it to authorize such discounts would allow the taxes levied and collected for one purpose, to be *devoted* to other purposes, as inhibited by that section; it being insisted that to allow the discounts would be "devoting" part of the levy to "another purpose than the one for which it was levied," it also being contended that the "other purpose" was the discount allowed to the taxpayer to make payment of his taxes before they are due. Manifestly, this would require a very strict construction of that section, and would not be in accordance with the rules of law governing the courts in the interpretations of constitutions.

In this State "all power is inherent in the people" (sec. 4, Constitution), and they, through their representatives in the Legislature, have all power except as is proscribed and prohibited by that instrument. It is different with the Federal Constitution, in that Congress

under that instrument has no power except that which is given to it by the Federal Constitution. The people. then of this Commonwealth, being jealous of their power. are not inclined to restrict or limit the power of their representatives in the Legislature, unless forced to do so by the plain and unambiguous language employed in, the Constitution, and whensoever, the language of that instrument may be susceptible to a construction upholding an act of the Legislature, or to a construction which would render it invalid, it is the duty of the courts to adopt the former and to hold the act constitutional rather than unconstitutional.

Adopting this rule, we are forced to the conclusion that the language employed in section 180 of the Constitution means that taxes levied and collected for the purposes of carrying on one department of government, should not be *devoted* to the carrying on of another department of the government, and does not mean that the taxes levied, for whatever purpose, shall not be reduced in the process of their collection by a sum offered as an inducement to facilitate their collection.

The same observations which we have made as to section 180 in regard to the rule of interpretation of constitutions applies with equal force to section 184, *supra*. The language therein invoked in appellant's behalf is: "The interest and dividends of said fund, together with any sum which may be produced by taxation or otherwise for purposes of common school education, shall be appropriated to the common schools, and to no other purpose." Manifestly, this language means, that the *fund* referred to therein, shall not be appropriated to any other purpose of government than to school purposes. We do not construe it to limit the power of the Legislature, or to prohibit the power of it to offer inducements to all the people alike, to pay their taxes; but if these taxes are paid, the sum so collected, shall not be *devoted* to any other purpose than school purposes.

It is contended, however, that within the meaning of that section of the Constitution, a tax is *produced*, whensoever it is levied; and it is therefore argued that there is no power in the Legislature to subtract from any part of the taxes levied any sum for any purpose. To this we cannot agree. To our minds, a tax is not *produced* until it is levied and collected, and unless

plainly prohibited, the levying power may reduce the sum levied in the process of collection, in order to *produce* the collected *fund*, and that this constitutes no misappropriation of any *produced fund*. Besides, it is conceded that the appellant, under the statute only, may borrow money for school purposes at a rate of interest not to exceed six per cent. and to pledge, or anticipate, moneys to be collected, in the future, to the payment of the interest; which manifestly could not be done if the restricted interpretation of these sections insisted upon by appellant, should be adopted. This would be as much of a misappropriation of the school fund, even more so (because it is a payment after the fund has been produced), than would be the discount authorized by the Legislature to the taxpayer, as an inducement for *hastening* their payment. The *collecting* of a tax is as much a part of the means employed by the taxing power in order to produce a fund arising from the tax, as is the levying of the tax. The one is a step in the process of production, which follows the other one.

It results, therefore, that the doctrine laid down in the case of City of Louisville v. Leatherman, 99 Ky., 213; Board of Education v. Board of Trustees, 113 Ky., 234; Shanklin v. Boyd, 146 Ky., 460, and similar cases does not conflict with the interpretation herein given. Moreover, it appears that this court has heretofore, at least indirectly, adopted the views which we have herein expressed in the opinion in the case of L. & N. Ry. Co. v. City of Louisville, 16 Ky. L. R., 796, in this language:

"It is plain, we think, that the charter provision, or the law in regard to the assessment, collection and payment of the taxes of the citizens within the municipality does not include railroads or such corporate property, and equally apparent that the Legislature, in regard to these corporations, can enact a different system or mode of assessment and collections from that under which taxes are ordinarily collected, and the discount allowed the citizen to encourage the prompt payment of taxes is not a discrimination in his favor as against appellant, nor is it open to constitutional objection."

The court also said, as to the reason for allowing discounts in general:

"The only object in making the discount, as we must assume, is to have the taxes promptly paid in order to

meet the municipal expenses for the year in which payment can be collected.''

It might be said, however, that the Legislature under section 171 of the Constitution has no power to authorize a discount for *any* purpose, as an inducement for the taxpayer to pay his taxes before they become due under the law. That section is as follows:

"171. Levy and Collection of by General Laws.— Uniformity. The General Assembly shall provide by law an annual tax, which, with other resources, shall be sufficient to defray the estimated expenses of the Commonwealth for each fiscal year. Taxes shall be levied and collected for public purposes only. They shall be uniform upon all property subject to taxation; and all taxes shall be levied and collected by general laws.''

It may be insisted that this prohibition is found in the last sentence of the section, and to allow a discount would render the taxes not "uniform upon the property subject to taxation within the territorial limits of the authority levying the tax.''

Answering this contention, it might be said that the opinion in the case of L. & N. Ry. Co. v. City of Louisville, *supra,* at least indirectly refutes it. In fact, this same contention was made by the appellant in that case, and it was denied, not because the taxes were not *"uniform upon all property,''* etc., but because the character of taxes due from the appellant was a different character of taxes from those upon which the discount was allowed, and that the discount was a part of the mode of collecting from the individual citizen his taxes. But, inasmuch as the appellant railroad company paid its taxes under a different mode of collection, it could not claim the discount. If the taxes of the appellant therein had been both levied and collected under the same mode adopted by the city as to its citizens, it would evidently have been entitled to the discount, and would have, under such circumstances been allowed it. To have adjudged otherwise, would not only have been discriminating against it, but likewise would have rendered its taxes *not* uniform with other taxes similarly circumstanced. There is nothing in permitting these discounts on taxes from destroying their uniformity. The privilege or favor is extended to all alike; and the poor man, as well as the rich man, if he seeks the benefit of the privilege, may obtain it. All that he is required to do is to "knock'' and "he shall re-

ceive," and the only thing that can prevent him from "receiving" is his failure to "knock."

The uniformity mentioned in the section under consideration refers to the rate of taxation, and forbids any discrimination, either in the rate, or privilege in the collection, of the taxes in favor of one class which should not be allowed to all others similarly situated. We are fortified in these views by text writers and courts of last resort. In 37 Cyc., 1166, we find it said:

"As an inducement to citizens to pay their taxes promptly, it has sometimes been thought proper to offer a rebate or discount on all taxes paid within certain time after they become due, and such a statute is valid, unless it permits the rebate or discount to be made in such a manner as to violate the constitutional requirement of a uniform and equal rate of assessment and taxation or some other particular constitutional provision."

This question was also presented to the Supreme Court of the United States in the case of Merchants, &c., Bank v. Penn., 167, U. S. 461, in which the contention was denied by that court in the following language:

"Again it will be perceived that this inequality in the burden results from a privilege offered to all, and in order to induce prompt payment of taxes, and payment without litigation. To justify the propriety of such inducement, we need to look no further than the present litigation. It is common practice in the states to offer a discount for payment before the specified time, and impose penalties for non-payment at such time. This, of course, results in inequality of burden, but it does not invalidate the tax. The inequality of result comes from the election of certain taxpayers to avail themselves of privileges offered to all. It was well said by Mr. Justice Williams, speaking for the Supreme Court of Pennsylvania, in the opinion in the present case: 'The argument is that inequality of burden establishes the unconstitutionality of the law under which the tax is levied.' If the validity of our tax law depends upon their ability to stand successfully this test, there are none of them that can stand." See also case of Comth. v. Goldburg, 167 Ky. Reports, p. 96.

We deem it unnecessary to further elaborate the questions herein involved. We conclude, then, that the tax rate of thirty-six cents, required to be collected by the city of Louisville for the benefit of appellant, is subject

to be reduced by the discounts provided and offered as an inducement for their hasty payment. And that it is competent under the Constitution, and prohibited by no section thereof, for the Legislature to so authorize, within reasonable limitations, not only as to school taxes, but all other taxes.

If, however, the language of the sections of the Constitution under consideration was ambiguous or doubtful in its meaning, under a well settled rule of constitutional construction, prevailing and recognized in American jurisprudence, we would have a right to look to the contemporaneous legislative construction of the language in order to determine its meaning and the sense in which the constitutional convention used it. As we have seen (and of which this court will take judicial notice), the legislative department of this State, not only continually since the adoption of the Constitution, but for many years prior thereto, assumed that it had authority to empower the agencies which it employed for the collection of taxes, including school taxes, to allow a reasonable rebate thereon in order to facilitate their collection. This continuous and unbroken course of action by the legislative department is a legislative contemporaneous construction to the effect that the sections of the Constitution, *supra,* did not withhold the power to authorize such rebates. Such a rule of legislative construction will not be allowed to overthrow the plain and unambiguous language of a constitution, howsoever long it may be indulged in, but where the language to be construed is ambiguous the rule of contemporaneous construction may be looked to by the courts as an aid in solving the ambiguity. And, so, in volume 8 Cyc., 737, we read:

"Legislative Construction. (a) Generally. Practical construction of constitutional provisions by the legislative department, in the enactment of laws, necessarily has great weight with the judiciary, and is sometimes followed by the latter when clearly erroneous. But this is a matter of policy only, for it is emphatically the province of the judiciary to construe the Constitution; and where the judicial and legislative construction of a constitutional provision conflict the judicial construction prevails. If the meaning of such provision is clear and unambiguous, legislative construction thereof is entitled to no weight; but if the meaning is doubtful, a practical

construction thereof by the legislature will be followed by the courts if it can be done without doing violence to the fair meaning of the words used in order to sustain the constitutionality of a statute.

"(b) Long Acquiescence. Legislative construction of constitutional provisions, adopted and acted on with the acquiescence of the people for many years is entitled to great weight with the courts, and will not be disturbed except for manifest error."

This text is supported by a great number of authorities from various courts of America, among which is Collins v. Henderson, 11 Bush, 74, which recognizes the rule now being considered. As stated, this rule would not be looked to if the language being construed was plain and without ambiguity, for the manifest reason that no plainly forbidden action on behalf of the Legislature will ever be upheld as constitutional, howsoever long it might have been indulged in; but, if on account of the meaning of the language being doubtful and ambiguous, and therefore susceptible of different meanings, the legislative department has, from the time of the adoption of the instrument, constantly pursued a particular construction of the document, which is perfectly consistent with the language used, then the courts are permitted to give weight to this legislative construction.

Moreover, as we have seen, this practice of permitting the Legislature to authorize rebates or discounts to taxpayers, was in operation previous to, and at the time of, the adoption of the Constitution, and if the convention which framed that instrument intended to have prohibited such practice, it could have easily done so by the use of a few easily understood and plain meaning words. This it failed to do, and by reason of such failure, we have a right to indulge the presumption that it did not intend to so limit the power of the Legislature in this regard.

It may be insisted that the construction which we have herein given to the sections of the constitution under consideration violates the spirit of that instrument, which we do not concede, but there exists no rule of law which will permit the courts to declare an act unconstitutional because it violates some supposed spirit pervading the Constitution.

In the volume of Cyc., *supra,* page 778, the limitation, circumscribing the power of the courts to adopt any such

supposed rule, is stated as follows: "The generally accepted rule is that courts will not declare a statute void merely because in their opinion it is opposed to the spirit supposed to pervade the Constitution;" and in the great work on Constitutional Limitations, by Mr. Justice Cooley, seventh edition, page 239, we read: "Nor are the courts at liberty to declare an act void because in their opinion it is opposed to a spirit supposed to pervade the Constitution, but not expressed in words." Quoting, with approval, from People v. Fisher, 24 Wend., 215, the learned author says: "When the fundamental law has not limited, either in terms or by necessary implication, the general powers conferred upon the Legislature, we cannot declare a limitation under the notion of having discovered something in the *spirit* of the Constitution, which is not even mentioned in the instrument." Following this on succeeding pages he shows clearly the difference between the nature and characteristics of a State Constitution and the Federal Constitution, and the rules governing their interpretation, as hereinbefore mentioned.

This court has on more occasions than one adopted the rule forbidding the looking to the supposed spirit of the Constitution by the courts in construing the language of such instruments as is laid down by the authorities, *supra.* The latest one to which our attention has been called is that of Yates, etc. v. Collins, 26 Ky. L. R., 558, on page 562, wherein this court, by Judge Settle, quoted with approval from the work of Mr. Cooley, *supra,* as follows:

"Nor are the courts at liberty to declare an act void because, in their opinion, it is opposed to a spirit supposed to pervade the Constitution, but not expressed in words. (Cooley's Const. Lim., 7th Ed., page 239, Edmunds v. Baubury, 28 La., 272; State, &c. v. Dillon, 32 Fla., 545)."

We can see many wholesome reasons why this rule of interpretation should not be adopted. It would open wide the door for each succeeding court or judge thereof, to enter into the uncertain field of speculation as to what is "the spirit prevading the Constitution," and this spirit would invariably be in some doubt, dependent on whatsoever the peculiar notions of the court, or judge, would imagine it to be; and thus the legality of statutes would largely be made to turn upon what the court at the

time might consider to be "the spirit pervading the Constitution."

This rule instead of establishing certainty as to the powers of the Legislature, would render the same exceedingly uncertain, a result which it is the settled policy of the law to avoid. So that, in any view which we may take, we are unable to find any ground upon which we are justified in declaring the legislation under consideration prohibited or forbidden by our Constitution, or that it is for any reason unconstitutional.

It results, therefore, that the judgment in so far as it forbids the allowing of the discount from the school taxes when paid before becoming due, as provided by the statute, is erroneous; and it follows that the judgment should be and is affirmed on the appeal of appellant, and reversed on the appeal of appellee, and it is so ordered.

Whole court sitting. Judges Carroll and Turner dissenting.

### DISSENTING OPINION BY JUDGE CARROLL.

It is my opinion that under the present Constitution the full amount of every tax that is levied for State, county, city, town or taxing district purposes must be collected, if collectible, without discount, rebate or compromise.

But, according to the majority opinion of the court, the Legislature may authorize a city to give any taxpayer who will pay his tax before it is due under the levy a discount, thus permitting the taxpayer who is able to avail himself of this privilege to satisfy his tax bill by paying less than the amount due and collectible under the levy. Believing that this is a plain violation of a plain and mandatory provision of the Constitution, I will, in view of the importance and public nature of the question, take the time to set out the reasons why I do not agree with the conclusion stated in the opinion.

The charter of the city granted by the Legislature, after providing that all city taxes, including school taxes, shall be levied by the general council and be due and collectible on May first of each year, provides, in section 2997, held valid in the opinion, that "taxes paid in January or the first ten working days in February, shall be reduced by a discount of 3%, and those paid in the rest of February by 2%, and those paid in March by 1%."

Under this authority it is proposed, in the case we have,- to take from the schools of the city, through this discount, a sum estimated to be several thousand dollars each year, and give it to those well-to-do taxpayers who are able to pay their taxes in January or February or March and get the discount allowed. Of this scheme the board of education very justly complains, insisting that it deprives the schools each year of a large amount of money to which under the Constitution they are entitled.

The right to allow this discount on city taxes levied for other than school purposes is not directly brought in issue on this record, but as the decision upholding the right to allow this discount on school taxes necessarily sustains the right to allow it on the other taxes, it may fairly be said that the validity of this legislation in its effect upon all city taxes is before the court on this appeal, and I will so treat it. But before coming to the general subject, I wish to deal for a moment with the school tax alone, as it presents one material question that does not apply to the city taxes proper, because the school tax is a State tax, while the other taxes are strictly city taxes.

We have written in City of Louisville v. Board of Education, 154 Ky., 316, and many cases therein referred to, that "every common school in the State, whether it be located in a populous city or in a sparsely settled rural district, is a State institution, protected, controlled and regulated by the State, and that the fact that the State has appointed agencies such as fiscal courts, school trustees and municipal bodies to aid it in the collection of taxes for the maintenance of these schools, does not deprive them of their State character. * * * Therefore, when a municipal body, or a county, or a school district levies taxes for school purposes, the tax so levied is a State and not a municipal, county or district tax, although it be levied and collected by municipal or county or district officers. The fact that the tax is levied and collected for the State by these agencies of the State appointed for that purpose does not deprive it of its character as a State tax."

So that the school tax on which the city proposes to allow this discount, is a State tax, as much so as if it were levied by the State to be collected by the sheriffs of the several counties and paid into the State treasury for general State purposes. Being then a State tax, I

confidently submit that the Legislature cannot provide
any scheme that will exempt some taxpayers in some
parts of the State from the payment of less than the
whole tax levied, or give a discount to some taxpayers
and deny it to others. But that is exactly what the Legis-
lature has attempted to do and what the opinion says it
had the right to do. In every other place in the State
except the city of Louisville the full amount levied for
school purposes must be collected if collectible and paid
over to the schools. But in Louisville alone a discount
is allowed to the favored taxpayers who have the means
to pay their taxes a few months before they are due,
and the school fund is reduced by the amount of this
discount. Suppose the Legislature should enact a spe-
cial law for Henry county undertaking to give a dis-
count to all taxpayers of the county who should pay their
State or school taxes three months before they are due.
Would any member of this court vote to sustain the legis-
lation? I think not; and yet there is no difference in
principle between the case we have and the one I suggest
The school tax levied and collected in Louisville is a
State tax as is the school tax levied and collected in
Henry county. The fact that Louisville is a city in a
class by itself does not give the Legislature the power
to deal with it in respect to the levy and collection of the
State taxes, or with respect to other State matters by
special legislation applicable to the city alone. The au-
thority to legislate specially for Louisville is confined to
affairs strictly municipal. This was so written in
Hager, Auditor v. Walker, 128 Ky., 1, where the court
said: "The cities and towns were divided into classes
distinctly for the purpose of dealing with their local af-
fairs. The classification was not intended for any other
purpose, or designed to influence or control legislation
for State purposes. It would be extending the effects
of classification of municipalities far beyond its legiti-
mate meaning to adjudge that the Legislature might
make the general law a local one by limiting its opera-
tion to certain territory."

And again in James, Auditor v. Barry, 138 Ky., 656,
where it is said: "When the subject-matter is purely one
of municipal government, it is clearly competent for
the Legislature to classify it alone upon number and
density of population, as the Constitution implies if it
does not expressly allow. * * * But where the subject is

"one of general application throughout the State, and has been so treated in a general scheme of legislation, distinctions favorable or unfavorable to particular localities, and rested alone upon numbers and density of population, are invidious, and therefore offensive to the letter and spirit of the Constitution."

But in the face of these direct authorities, and section sixty of the Constitution, providing, in part, that "the General Assembly shall not indirectly enact any special or local act * * * by exempting from the operation of a general act any city, town, district or county," the majority opinion holds that the Legislature may enact special legislation applicable to Louisville alone, affecting not its municipal but State affairs, and thus create an exemption in the operation and effect of a general law.

Coming now to the validity of this discount section as a whole and as applied to city taxes proper as well as school taxes, section 171 of the Constitution provides, in part, that, "Taxes shall be levied and collected for public purpose only. They shall be uniform upon all property subject to taxation within the territorial limits of the authority levying the tax; and all taxes shall be levied and collected by general laws." Section 174 provides, in part, that "All property, whether owned by natural persons or corporations, shall be taxed in proportion to its value, unless exempted by this Constitution; and all corporate property shall pay the same rate of taxation paid by individual property."

These provisions of the Constitution apply with equal force to all taxes levied and collected whether the levy and collection is made by the State for State purposes, by school authorities for school purposes, by counties for county purposes, by municipalities for municipal purposes, or by taxing districts for purposes for which they are allowed to levy and collect taxes. The same strict rule of uniformity governs every tax that is levied whether the territory in which the tax is imposed embraces the entire State or the smallest political or municipal sub-division in it. If the Constitution had not spoken on this subject, the Legislature would be free to exercise its discretion in the manner of levying and collecting taxes. But as the Constitution has undertaken to regulate and control this subject, we must look to it for the purposes of ascertaining whether it permits discounts to be allowed.

The word "Uniform" in section 171 is the controlling word in the sentence taken from the section quoted, and the first inquiry is, what does this word mean? Clearly its application is limited to taxes that are levied and collected. This section does not treat at all of the assessment of property. It deals with the levy and collection of taxes after they have been assessed. The assessment of property is provided for in section 172 of the Constitution, where it is said: "All property, not exempted from taxation by this Constitution, shall be assessed for taxation at its fair cash value, estimated at the price it would bring at a fair voluntary sale." Under this section there must be uniform assessment in the territory affected, no matter for what purpose or by what authority the assessment is made.

After the property has been assessed, then the taxes that may be levied and collected must be uniform in the territory affected. Obviously this means that the same rate of taxation must be imposed, and also means that the rate that is imposed must be paid. If the tax levied is a property tax of fifty cents on each one hundred dollars' worth of property assessed, then the taxpayer must pay the full amount of tax due by him according to this levy. One taxpayer cannot be required to pay a greater amount in proportion to the assessed value of his property than any other taxpayer, nor will any taxpayer be permitted to pay a less amount according to the value of his property than any other taxpayer. It is true that a taxpayer who does not pay his taxes when they fall due may be visited with interest and penalties and costs. But these items are not taxes. They are merely expenses or penalties that he must bear for failing to pay his taxes. These expenses or penalties do not increase the amount of his tax, nor do they lessen it. The amount of tax he must pay remains the same as it was when fixed by the levy.

But, admitting all this, the argument is made that the rule of uniformity in the levy and collection of taxes is not destroyed or infringed upon by legislation allowing the discount, because it is said the discount, as well as the means to secure it, are open to all taxpayers, and so the mere fact that some take advantage of the discount and others do not, does not alter the uniformity of the scheme.

Theoretically speaking, this may be true, and if all persons who were taxed could pay their taxes on the same day, or within the same period, then all would receive a like discount or rebate, and there would be no discrimination or lack of uniformity. The taxes levied and collected would be uniform, because all would pay the same rate equally and alike in proportion to the assessed value of their property.

But a law may be very fair and equal on its face and yet very unfair and unequal, and so intended to be, in its practical application to the subjects it was intended to affect. And so in determining whether a law is uniform or not, the court will not be concluded by the appearance of uniformity on its face, but will look to see what its practical application and effect was intended to be and will be.

In the enactment of this law it was not intended or expected that all taxpayers would or could pay their taxes in time to get the discount. The Legislature knew, as everybody else knows, that all taxpayers cannot pay their taxes on the same day or during the same period; for example, during the month of January in the year in which the taxes are due. The Legislature that enacted this discount law knew that only a limited number of persons could pay the tax within the time the discount was allowed and that the majority of the taxpayers would not be able to do this or to save in this way the discount.

The levy and collection of taxes is a practical, business proposition, to be dealt with in a practical, business way, and in such a way as to distribute the burdens as nearly equally as may be. Of course equality of burdens is an impossibility, but uniformity in the law regulating the subject is not only possible but entirely practicable, and the scheme of uniformity was put in the Constitution in an effort to prevent discrimination and to distribute as equally as might be the burden, to the end that there might be imposed on all classes in the territory affected the same rate of taxation. The most prominent feature in the constitutional plan of revenue and taxation is uniformity; uniformity of assessment, uniformity of levy, uniformity of collection. And the system of discount violates this rule of uniformity. It gives to the rich an advantage denied to the poor. It discriminates in favor of the large and well-to-do tax-

payer and against the small, and poor taxpayer, because one can avail himself of the discounts and the other cannot. And aside from this the discount that is saved by the large and well-to-do taxpayer is lost to the city and thus puts an additional burden on the other taxpayers. A big discount like this is precisely the same thing as if a less rate of taxation was imposed on the man who, can pay his taxes in February than was imposed on the man who can not pay them until April. The taxpayers who eagerly pay their taxes when the 3% discount is available, so regard it, and that is the only reason why they pay before the tax is due. Unless they were benefited they would not pay.

Considering the assessed value of property in the city of Louisville, the rate of taxation, and the great number of large and well to-do taxpayers in the city, it may easily be assumed that the city gives to this class of taxpayers in the form of discounts many thousands of dollars a year. This sum, whatever it may be, whether more or less than one hundred thousand dollars, is necessarily lost to the city, and it necessarily puts upon the taxpayers of the city a burden equal to the amount of the discount, whatever that burden may be. If all the taxes levied are needed as they should be to defray the expenses of the city, it inevitably follows that the loss created by giving the discount must be made up by increased taxation.

I further submit that there is no difference whatever in principle between allowing the taxpayer a discount for the prompt payment of his taxes and paying him a premium for the prompt payment. If the Legislature had said to the city that it could give to every taxpayer who would pay it five hundred dollars in January of each year, a premium of fifteen dollars in money, it would be doing no more than has been done by the present legislation, which permits the taxpayer whose taxes amount to five hundred dollars to satisfy them by the payment of $485.00. But if the act had offered a premium in place of a discount, I doubt if any one could be found who would stand sponsor for its validity. The city of Louisville is the only place in the State where any discount is allowed on the payment of taxes that have been levied. It is the only place in the State in which the taxpayer is allowed to save at the rate of 12% a year by paying his taxes three months before they are due. In every

other city and town and county in the State the whole tax that is levied must be paid, if collectible, and it was certainly not intended by the Constitution that the Legislature might select a part of the State and give to the municipal government in that part the authority to discriminate in the matter of taxation in favor of that class of its citizens who could pay their taxes in February and against the other class who could not pay until May.

It is said that the legislation allowing this discount was enacted for the purpose of holding out an inducement to people to pay their taxes, so that the city government might be able to promptly collect the revenue necessary to defray its expenses. But, of course, this furnishes no valid reason for this discriminatory law. The necessities of the municipal government are created by its own action. It is entirely within the power of municipal authorities to so regulate the business affairs of the municipality as to defray its expenses by the amount realized from the collection of taxes when they are due and payable. This is what every city in the State except Louisville does, and what every town and county in the State does. If the city of Louisville creates a debt or incurs a liability that should be paid before its revenues are due, the Constitution does not permit it to say—although so authorized by the Legislature—to the well-to-do taxpayers, that if they will pay their taxes before they are due, it will give them a discount amounting to 12% a year and thus put the sum saved by this class of taxpayers as an added burden on the other less fortunate taxpayers.

No authority has been cited in the opinion in support of legislation of this character; and after investigation, I think none can be found, except, perhaps, one case from the state of Pennsylvania: Com. v. Merchants' & Manufacturers' National Bank of Pittsburg, 168 Pa., 309. This case afterwards went to the Supreme Court of the United States, and may be found in 167 U. S., 461, 42 L. Ed., 236; and the holding of the Supreme Court in this case is referred to as authority for the discount by counsel for the city. But the court distinctly upheld the statute upon the ground that the decision of the Pennsylvania court was conclusive as to any question of conflict between it and the state constitution.

Nor, can any reliance be placed on the rule of contemporaneous construction asserted as authority for the validity of this discount. This rule applies only to the construction of statutes and does not go to the extent of holding that mandatory provisions of the Constitution may be abolished or frittered away by legislative acts; and especially is this so when no property rights depend on the construction. The validity of a legislative act such as the one here involved, that does not pretend to settle property rights, may be called in question at any time by any person whose interests are affected by it.

I think the judgment holding that no discount on school taxes can be allowed should be affirmed, and further that the entire discount statute should be held invalid.

Judge Turner concurs in this dissent.