Case 59—PROSECUTIONS AGAINST THE NEW SOUTH
BREWING & ICE COMPANY AND D. T. CREEDLE FOR
VIOLATING THE LOCAL OPTION LAW.—Oct. 9.

## New South Brewing & Ice Co. v. Commonwealth.

| 123  | 443  |
| f125 | 266  |

Appeal from Laurel Circuit Court.

H. C. FAULKNER, Circuit Judge.

## CREEDLE v. COMMONWEALTH.

Appeal from Fulton Circuit Court.

R. J. BUGG, Circuit Judge.

Both Appeals heard together.

Defendants in both cases convicted and appeal.'
Both cases Affirmed.

1. Intoxicating Liquors—Local Option—Sale by Manufacturer—Ky.
St. 1903, Sec. 2558, a part of the local option act of March
10, 1894, provides that the provisions of this act shall not
apply to any manufacturer or wholesale dealer, who, in good
faith, and in the usual course of trade, sells by the wholesale,
in at least five-gallon quantities. Acts 1904, p. 160, c. 76,
entitled "An act to regulate the sale of intoxicating liquors by
wholesale in this commonwealth," declares it unlawful to sell
by wholesale intoxicating liquors (except manufacturers sell-
ing liquors of their own make) in any local option district.
Held that the act of 1904 forbids wholesaling of intoxicants
in local option districts, excepting only that a manufacturer
may sell at his manufactory, though that be in such district.

C. W. METCALFE, MALCOLM YEAMAN, KOHN BAIRD &
SPINDLE, GEO. WASHINGTON and WHEELER, HUGHES &
BERRY attorneys for appellants.

### POINTS AND AUTHORITIES CITED.

1. The indictments are demurrable, for the reason, that, if
the Act of April, 1884—Acts 1883-84 Vol. 1, page 1116—be now
in force, then each indictment charges two separate offenses.
(Crim. Code.. Sec. 165 and 127.)

2. The manufacturer of intoxicating liquors can sell by wholesale in quantities not less than five gallons, to be delivered at one time in a local option county, or a county where the sale of liquor is prohibited by Special Act. (Acts 1904, page 160, Ky. St., Sec. 2558; Davis v. Com'th, decided Sept. 30, 1904, 82 S. W. 277.)

3. Sale of five gallons at one time, and by one delivery, is a wholesale transaction.    (Ky. St., Sec. 2558, 4199; U. S. Com. S., 1901, Sec. 3244.)

4. The seller was under no legal obligation to inquire as to the use the buyer intended to make of the thing sold. (Hedges v. Wallace, 2 Bush, 442; Davis v. Com'th, 82 S. W., 277.)

5. The sale to be by wholesale is not required to be made to a retail dealer. (Walker v. Com'th, 75 S. W., 342, 25 Ky. L. R., 401; Bouvier—Title, "Wholesale.")

6. The special acts in regard to sales of liquor passed before the adoption of the present Constitution, are merged in the acts on that subject adopted since the Constitution, which latter acts constitute the whole law on that subject. (McTigue v. Com'th, 99 Ky., 68, and authorities, there cited; Acts 1902, page 41; Thompson v. Com'th, 103 Ky., 685.)

N. B. HAYS, Attorney General, C. H. MORRIS and W. H. HESTER for the appellee.

1. It is the contention for the State that the law of 1894, as amended by act of 1904, confines the manufacturer or distiller in the wholesale of his own products, to the premises and the situs where such manufactory or distillery is located. He may there, and not elsewhere, in good faith sell his own product by wholesales. The limitation "not to be drunk on the premises" means nothing more nor less than the place of sale and the place of consumption of said whisky must be different, and the law requires the manufacturer or distiller to see it is not drunk on the premises.

2. The Legislature intended to make the place of sale and the place of drinking different, else it would not have used the phrase not to be drunk on the premises," and as this certainly refers to the premises of the distiller or manufacturer, then the sale must be at the premises of such manufacturer.

3. The two things necessary to exonerate the appellant from any violation of the local option law in question under the act of 1904, are, First, the location of the distillery or manufactory in said local option county; Second, sales by the wholesale of their own liquor in good faith and in the course of trade, where said manufactory is located.

4. It is also the contention of the State that the appellant is not selling its own product in good faith, and in the regular course

of trade; that it is neither a wholesale dealer nor manufacturer in Laurel County; that appellant has resorted to its method of sale in said county, as shown by the agreed facts, as a pretense, and is a plain violation of section 2570, Ky. Statutes. (26 R., 59, Davis v. Commonwealth.)

OPINION BY CHIEF JUSTICE HOBSON—AFFIRMED.

Section 2558, Ky. St. 1903, which is a part of the local option act of March 10, 1894, among other things provided: "The provisions of this act shall not apply to any manufacturer or wholesale dealer, who, in good faith, and in the usual course of trade, sells by the wholesale, in quantities of not less than five gallons, delivered at one time, and not to be drunk on the premises." Under this provision any manufacturer or wholesale dealer could sell intoxicants in quantities of not less than five gallons. Thus the law stood until March 22, 1904, when the General Assembly passed the following act (Acts 1904, p. 160, c. 76.)

"An act to regulate the sale of intoxicating liquors by wholesale in this Commonwealth.

"Be it enacted by the General Assembly of the Commonwealth of Kentucky.

"Section 1.  It shall be unlawful to sell by wholesale any spirituous, vinous, malt or other intoxicating liquors, regardless of the name by which it is called (except manufacturers selling liquors of their own make) in any county district, precinct, town or city, where the sale of such liquor has been prohibited by special act of the General Assembly, or by vote of the people under the local option law.  Any person violating this act shall be deemed guilty of violating the local option law and shall be subject to trial and punishment according to the provisions of the same and its amendments.

"Sec. 2.  All laws inconsistent or in conflict with this act are hereby repealed."

In the first of the above cases the New South Brewing Company, a corporation located in Bell county,

Ky., sold in Laurel county where the local option law was in force, beer which it manufactured. In the second case the Cook Brewing Company, a corporation located in Evansville, Ind., sold beer of its own make through its agent D. T. Creedle in Fulton county where the local option law also prevailed. The defendants in both cases were fined, and they appeal insisting that, as the beer sold was of their own make and the sale was in quantities exceeding five gallons in good faith and according to the usual course of trade, they came within the exception made in the act just above quoted exempting from its operation "manufacturers selling liquor of their own make."

Under the original act either manufacturers or wholesale dealers could sell in local option districts in quantities exceeding five gallons. A great many indictments grew out of the provisions of the act in cases where it was insisted that the sales were not made in good faith, and according to the usual course of trade. In not a few parts of the State there was great difficulty in enforcing the local option law with this qualification to it. The purpose of the Legislature in passing the act of 1904 was to secure the better enforcement of the law. It was not intended to take away from the wholesale dealer the right to sell and to give the exclusive privilege of selling intoxicants in the local option districts to manufacturers selling liquors of their own make. The Legislature did not have in mind merely regulating the class of persons who should sell in local option districts. Its purpose was to regulate the sale of intoxicants by wholesale in these districts. If we construe the act as claimed by appellants its only effect would be to stop the wholesale dealer from selling while it permitted the manufacturer to sell his own make without regard to where his manufactory was situated, in or out of this State. The Legislature did not intend to forbid the wholesale dealers in this State from selling in local

option districts and to authorize manufacturers in Indiana, Ohio, and other states to sell their products in such districts. When the Legislature provided that it should be unlawful to sell by wholesale any spirituous, vinous, or malt liquors in any local option district it was perceived that if the act stopped here great injustice would be done, many persons whose manufactories were situated in local option districts and who would thus be unable to sell their product from their warehouses at their plant. To avoid this hardship manufacturers selling liquors of their own make were excepted out of the operation of the act. What the Legislature had in mind was the regulating of local option districts. It forbade the selling by wholesale of intoxicants in such districts. It excepted out of the operation of the act manufacturers in such districts selling liquors of their own make. When a foreign corporation comes into this State to sell beer it is not material who made it. It sells as a wholesale dealer whether the beer is of its own make or someone else's. We must, therefore except from the operation of the act manufactories located in other States; but the act was not intended to make a distinction between manufactories in this State and other States. The manufacturer in one State is entitled to sell his goods in another State under the same privileges as are enjoyed by a manufacturer of the same goods in that State. What the Legislature had in mind was manufacturers manufacturing in the local option district where the sale is made. The Legislature may not grant special privileges except in consideration of public services. If the Legislature had undertaken to grant manufacturers the exclusive right to sell their own make in local option districts and to exclude wholesale dealers the act could not be sustained; for the Legislature cannot grant any such special privilege to one class of persons who perform no public service. In Bailey v. Commonwealth, 74 Ky. 691, this court in

laying down the rules for the construction of statutes, said: "Words in a statute were always to be understood according to the approved use of language. But there are other rules of construction of equal dignity and importance which must not be overlooked, and which, although not incorporated in our statute, are as binding upon the courts as if embodied in it. One of these rules is that 'every statute ought to be expounded, not according to the letter, but according to the meaning,' and another that 'every interpretation that leads to an absurdity ought to be rejected'; and still another that a law 'ought to be interpreted in such manner as that it may have effect and not be found vain and illusive.' "

The act in question, if the construction urged by appellants is adopted, would be vain and illusive. It would lead to just the opposite result from that the Legislature intended as it would then authorize manufacturers everywhere to sell in local option districts, and would be no protection to such districts at all. Every act must be construed liberally to effectuate its purpose; it must not be so construed as to have no effect. The title of the act is to be read with the body of it. It is "An act to regulate the sale of intoxicating liquors by wholesale in this Commonwealth." By the second section all laws in conflict with it are repealed. The purpose of the repealing clause was to repeal so much of section 2558, Ky. St. 1903, above quoted as authorized manufacturers and wholesale dealers to sell in local option districts. If appellants' construction of the act were correct, it would not regulate the sale of intoxicants by wholesale at all, but would simply take away from the wholesale dealer a privilege he had enjoyed and give it to the manufacturer. This would make the act one for the benefit of the manufacturers, and not one for the benefit of the local option districts. Something like two-thirds of the State is under the local option law. We must attri-

New South Brewing & Ice Co. v. Commonwealth.

bute a fair purpose to the legislative department of the State and it cannot be presumed it intended to give wholesale dealers who sell their own make such an advantage over their neighbors who sell by wholesale, but do not manufacture. The first part of section 1 makes it unlawful to sell by wholesale in local option districts. The exception relates to sales by manufacturers. When a manufacturer sells away from his manufactory he sells as a wholesale dealer under this act. To give the act any other construction would be to defeat the evident legislative purpose and adjudge it a vain attempt on the part of the Legislature to vest a special and peculiar privilege in manufacturers rendering no public service.

We are not unaware that at the last session of the General Assembly the act of 1904 was amended so as to except from the operation of the act manufacturers selling their own make at the place of manufacture. The amendment was passed to remove the doubt which had arisen as to the construction of the original act. It was simply declaratory, and added nothing to the sense of the original act.

The judgment in both cases is affirmed.