## Adams v. Greene, Auditor.

(Decided December 13, 1918.)

## Appeal from Franklin Circuit Court.

1. Statutes—Ambiguity.—Section 1 of chapter 139 of the Acts of 1918, repealing and re-enacting section 15 of chapter 24 of the Acts of 1916, and providing that the Auditor shall issue his interest bearing warrants for the unpaid portions of the salaries of public school teachers, is not so ambiguous, uncertain and impracticable in its terms, and in its necessary effect, as to render it void.

2. Statutes—Issue of Interest Bearing Warrants to School Teachers—Constitutional Law.—Section 15 of chapter 24 of the Acts of 1916, as re-enacted by section 1 of chapter 139 of the Acts of 1918, and requiring the Auditor to issue interest bearing state warrants for unpaid portions of the salaries of public school teachers, and that the interest thereon shall be paid out of the school fund, violates neither section 184 of the Constitution providing that the common school fund shall be appropriated to the common schools, and to no other purpose, nor section 186 of the Constitution providing that each county in the commonwealth shall be entitled to its proportion of the school fund on its census of pupil children for each school year, which shall be used exclusively in aid of its common schools.

3. Statutes—Issue of Interest Bearing Warrants to School Teachers—Constitutional Law.—Section 15 of chapter 24 of the Acts of 1916 as re-enacted by section 1 of chapter 139 of the Acts of 1918 requiring the Auditor to issue interest bearing warrants for unpaid portions of the salaries of public school teachers, does not violate section 19 of the Kentucky Bill of Rights providing that no law impairing the obligation of contracts shall be enacted, since plaintiff's contract was made after the Act of 1918 became effective.

LESLIE W. MORRIS for appellant.

CHARLES H. MORRIS, Attorney General, and D. O. MYATT, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE MILLER—Dissolving injunction.

This action involves the interpretation and constitutionality of section 1 of chapter 139 of the Acts of the General Assembly of 1918, which reads as follows:

"Sec. 1. Section Repealed—New Section Substituted.—That section 15 of chapter 24, of the Acts of the General Assembly of 1916, approved March 18, 1916, be

and the same is hereby repealed and there is hereby enacted in lieu thereof the following:

"Section 15. Distribution by Auditor on Warrants of Superintendent—Dates of. . . . For each school year the Auditor of Public Accounts, on the successive warrants of the Superintendent of Public Instruction, shall distribute the amount of the school fund due each county *superintend* of common schools and the amount due each city, town or village organized as one district, to the treasurer of the school board thereof as follows: On or before the first day of September one-sixth of the whole amount; on or before the first day of October one-sixth of the whole amount; on or before the first day of November one-sixth of the whole amount; on or before the first day of December one-sixth of the whole amount, on or before the first day of January one-sixth of the whole amount, and on or before February the first the residue including the distributed surplus; provided that if the amount in the treasury on the first day of September, October, November, December, January or February, be insufficient to admit of a full distribution of the proportion required by this act, then the Auditor of Public Accounts shall upon the successive warrants of the Superintendent of Public Instruction issue his warrant, bearing interest at the rate of five per centum per annum for the residue. The warrant shall be paid together with the interest thereon out of the common school fund." Acts 1918, p. 592; Carroll's 1918 supplement, sec. 4376.

The section of the act of 1916 thus repealed and amended provided that if the amount in the treasury to the credit of the school fund on the first days of October, November and December should be found insufficient to admit of a full distribution of the proportions of the school fund required by that act, the Auditor should, upon the successive warrants of the Superintendent of Public Instruction, distribute the amount of the school fund then on hand proportionately, without preference or partiality, to all the counties in the state as theretofore directed. Acts 1916, p. 169. It will be observed that instead of disbursing the fund on hand proportionately among the schools of the state, the Auditor is now required, by the act of 1918, to issue his interest bearing warrant for the entire residue necessary to make full distribution of the proportion required by the act.

In this action by Clarence Adams, a school teacher and taxpayer against the State Auditor, the plaintiff seeks to enjoin the Auditor from complying with the act of 1918 upon the grounds (1) that the act of 1918 above quoted is ambiguous, uncertain and is so impracticable in its terms and its necessary effect, as to render it void; (2) that it violates sections 184 and 186 of the Constitution providing that the common school fund shall be appropriated to the common schools and to no other purpose; and, (3) that it violates section 19 of the Kentucky Bill of Rights, which provides that no law impairing the obligation of contracts shall be enacted.

The petition alleges that when the Superintendent of Public Instruction presented to the Auditor a certified account showing the amount due the common schools of the several counties of the state, there was not in the school fund in the treasury of the Commonwealth a sum sufficient to meet the payment then due for that purpose; that the Superintendent of Public Instruction had demanded of the Auditor that he issue his warrants for the amounts unpaid, for the purpose of paying the common school teachers; and that the Auditor was preparing to and would comply with the demand of the superintendent by issuing interest bearing warrants as provided by the act of 1918, unless he be enjoined from doing so. The circuit court enjoined the Auditor, and he has applied for a dissolution of the injunction.

1. It will be observed that while the act of 1918, above set out, directs the Auditor to issue "his warrant," it does not specify whether he shall issue one warrant to the State Superintendent covering the entire balance due, or whether he should issue separate warrants to each county superintendent, and to each city, town and village organized as one district. And, if he should take the language literally and issue one warrant, to whom should he deliver it? The importance of the question will be fully realized when it is recalled that the warrant demanded, as of the first of September, called for more than a half million dollars, and that a like sum was due on October 1st. But the act gives the Auditor no directions as to what disposition he shall make of the warrant or what disposition shall be made of it by the person to whom he should deliver it.

Again, attention is called to the fact that the act of 1918 confers no express authority upon the treasurer,

or any state officer, to call these warrants for payment; and, no time is named as to when the call should be made, and no provision is made that interest shall cease after the call, as in the case of other interest bearing warrants issued by the Auditor under section 4688a of the Kentucky Statutes.

The great fundamental rule in construing statutes, is to ascertain and give effect to the intention of the legislature. Grinstead v. Kirby, Judge, 33 Ky. L. R. 287, 110 S. W. 247; New South Brewing & I. Co. v. Commonwealth, 29 Ky. L. R. 873, 96 S. W. 805.

In Bailey v. Commonwealth, 11 Bush 691, the court, after referring to the rule that the words of a statute are to be taken according to the approved use of language, said:

"But there are other rules of construction of equal dignity and importance which must not be overlooked, and which, although not incorporated in our statute, are as binding upon the courts as if embodied in it. One of these rules is 'that every statute ought to be expounded, not according to the letter, but according to the meaning;' and another that 'every interpretation that leads to an absurdity ought to be rejected;' and still another that a law 'ought to be interpreted in such manner as that it may have effect and not be found vain and illusive.' "

The first duty of a court in interpreting a statute is to construe it, if possible, so as to give it sensible effect and make it of binding force. And, in doing this, resort may be had not only to the language and arrangement of the statute, but also to the intention of the legislature; the object to be secured, and to such extrinsic matters as the circumstances attending its passage; the sense in which it was understood by contemporaries; and its relation to other laws. 36 Cyc. 1102.

A statute will not be held void for uncertainty if any sort of practical or sensible construction may be given it. Mere difficulty in ascertaining its meaning, or the fact that it is susceptible of two interpretations, will not render it nugatory. But if, after exhausting every rule of construction, no sensible meaning can be given to a statute, or if it is so incomplete that it cannot be carried into effect, it must be pronounced inoperative and void. Lewis' Southerland's Stat. Cons., sec. 86.

Applying these rules to the case in hand, it must be borne in mind that chapter 139 of the acts of 1918 above quoted, was enacted as a substitute for chapter 24 of the acts of 1916. Its first section so declares. By referring to the act of 1916, we find that sections 9 to 17 inclusive of that act relate to the common school fund. Section 9 specifies what shall constitute the school fund; section 10 provides that the school fund shall be paid into the treasury and shall not be drawn out, or appropriated, except to pay the expenses of the State Department of Education of whatever character or kind, and in aid of the common schools as provided in that chapter. Section 11 provides that no part of the common school fund, except as otherwise expressly provided, shall be used for any other purpose than the payment of teachers of the common schools; and section 12 requires the Auditor to keep an account of said fund, and once each month to transfer to the credit of said fund all sums received by the treasurer for the benefit of the common schools.

Section 13 provides that the net revenue of the fund accruing during each school year shall constitute the sum to be distributed, but no fees to county judges or clerk, discount on checks other than incidental expenses shall be paid out of the distributional share of the revenue apportioned to any county; while section 14 defines the duty of the Superintendent of Public Instruction with reference to making apportionments to the several counties of the state. Then comes section 15, which is repealed by the act of 1918 and amended so as to read as heretofore set out in this opinion. Section 16, also repealed and re-enacted by the act of 1918, provided for the fixing of the *per capita;* and section 17 provides that the surplus remaining in the dog tax fund shall be placed to the credit of the school fund.

It will thus be seen that none of these sections of the school law relate to the distribution of the state school fund among the teachers; they merely provide the manner in which the Auditor, or Superintendent of Public Instruction, and the State Treasurer, shall perform their duties. It certainly was not the legislative intent, as expressed in the act of 1918, to require the Auditor to issue his warrants to the teachers of the various districts of the state. And, since there is no statute, so far as we have been advised, that requires the Auditor to draw his warrant in favor of the State Superintendent of Pub-

lic Instruction, we think it evident that the act of 1918 intended that the Auditor should draw his warrant, payable to each county superintendent of common schools, and to the treasurer of the school board of each independent school district in the state, for the amount due them for their respective teachers as is shown by the certification of the Superintendent of Public Instruction. This the act of 1918 requires the Auditor to do each month, beginning with September and continuing until February. The act of 1916 required the Auditor, in case of a deficiency, to distribute the school fund on hand proportionately between the counties of the state; the act of 1918, instead of requiring this proportionate payment directs the issuance of a warrant for the entire amount due. This evidently means that the warrants are to be issued to the same persons to whom the proportionate payments would have been made under the act of 1918, to-wit, the county superintendents of common schools, and the treasuries of the school boards of independent districts.

But is it insisted that the act does not direct what disposition the superintendents of the several counties and the treasuries of the school boards of the various cities and towns maintaining independent school districts, shall make of the warrant after its delivery to them. It is a well known and unfortunate fact that the annual taxes for common school purposes do not become fully available until in December of each year, while the public schools begin in September. There is no provision made in the school law for the county superintendents to pay their teachers prior to the second Saturday in October, when they shall be paid for the month or months completed. Sec. 55, chapter 24, Acts 1916, p. 189; Carroll's 1918 supplement, sec. 4407. And, under section 15 of the act of 1916, before its amendment by the act of 1918, the Superintendent of Public Instruction and the Auditor were not required to distribute the state school fund among the various counties, cities, and towns, until the first of October and on the first of each month thereafter up to and including the 1st of February. If, therefore, the act of 1918 requiring the payment of salaries on the first days of September, October and subsequent months does not have the effect to supersede section 55 of the act of 1916, the county superintendents are required to hold any money that may be paid to them by

the Auditor prior to the second Saturday in October of each year until that day, and the teachers cannot possibly be benefited by the amendment, since they cannot receive their pay any earlier than they did under the act of 1916.

It is clearly evident, however, that the purpose of the General Assembly in passing the act of 1918, was to enable the teachers to receive their full pay promptly at the end of each month. This evident purpose cannot always be accomplished, however, unless the county superintendents and independent school boards are invested with the power and authority of selling their warrants for the purpose of using the proceeds in the payment of their teachers' salaries, as they become due. This they may do, provided the warrants be sold for their face value, including interest accrued thereon at the time of sale. To sell them for a less sum would, to the extent of the deficiency, be an impairment of the school fund in violation of the Constitution and laws of the state.

In considering the powers and duties of the State Auditor in this connection, we should not overlook the fact that at the time of the passage of the act of 1918 there was on the statute books what is now section 4688a of the Kentucky Statutes, which provides for the stamping of certain state warrants drawn by the Auditor so as to cause them to bear interest. It also prescribes the duties of the State Treasurer in paying warrants pursuant to his call, and for the cessation of interest thereafter. But as this section had not theretofore been construed so as to apply it to warrants for teachers' salaries, there can be no doubt that the legislature intended by the act of 1918, to place warrants for teachers' salaries within that provision of the existing statute, in so far as the duties of the Auditor and Treasurer might be necessary in administering the act.

In his purpose of issuing these school warrants, the Auditor was construing the amendment of 1918 and section 4688a together, so as to make the warrants bear interest from the date upon which they were stamped, and stop the running of interest at the date upon which the warrants were called for payment. In this we think the Auditor correctly construed the act of 1918.

The date upon which a call for school warrants should be made will depend entirely upon the amount to the credit of the school fund. In other words, the statutory

provisions governing the call and payment of other interest bearing warrants should be applied to school warrants, keeping them, of course, separate and distinct from other warrants, and confining their payment to disbursements from the school fund. So, whenever the condition of the school fund justifies a call for outstanding warrants under the statute, the Treasurer will make the call, and interest will cease as in the case of other interest bearing warrants.

2. Does the amendment of 1918 violate section 184 of the Constitution, which provides that the common school fund shall be appropriated to the common schools, and to no other purpose? Section 186 of the Constitution further provides that each county in the Commonwealth shall be entitled to its proportion of the school fund on its census of pupil children for each school year, which shall be used exclusively in aid of its common schools. The argument that it does impair the school fund is based upon the provision of the act that "the warrants shall be paid together with the interest thereon out of the common school fund." It is contended that the school fund is thus impaired to the extent that interest is paid out of the school fund in the redemption of the warrants. But it has never been held that sections 184 or 186, *supra*, limits expenditures of this fund to the payment of teachers. On the contrary, in Superintendent of Public Instruction v. Auditor, 92 Ky. 180, it was held that the expenses of the Department of Education might be paid out of the common school fund. In Higgins v. Prater, Sheriff, 91 Ky. 6, it was held that a tax levied for the support of the Agricultural and Mechanical College of Kentucky was valid although that institution was not a part of the common school system. And, in the late case of the Board of Education of Louisville v. Sea, Tax Receiver, 167 Ky. 772, it was held that a statute allowing rebates and discounts in the collection of taxes for school purposes was not a misappropriation of any sum produced for such purposes as is denounced by section 184 of the Constitution, the allowing of the rebates or discounts being a part of the cost of collecting the school taxes. In our opinion it is clear that the use of the school fund in the payment of interest upon teachers' warrants is an appropriation to school purposes, and that it does not contravene section 186 of the Constitution. On the contrary, it aids the teachers of

the common schools in obtaining their salaries promptly; and as the state has the right to say what their salaries shall be and how they shall be collected and paid, this constitutional provision is not ignored so long as the fund is applied to school purposes.

3. Finally, it is contended that the act of 1918 violates section 19 of the Kentucky Bill of Rights, providing that no law impairing the obligation of contracts shall be enacted. The complaint is that the act of 1918 impairs the obligation of the plaintiff's contract as a teacher in that it changed his contract which was made with the board of education before the statute became effective on June 18, 1918.

The contract is not filed, and its date and terms are not stated. But, without showing the nature or the extent of the impairment, the petition correctly assumes that "change" and "impairment" are equivalent terms in a constitutional sense. Story on Const., sec. 1385. Treating the question, therefore, as raised, the first object of our consideration is the date of the contract; for, if, under the law, the contract could only have been made after June 18, 1918, the allegation of the petition that it was made prior to that date, avails nothing, and the constitutional question is not raised. Treating the relation between the teachers and the boards of education, therefore, as contractual, we must look to the statutes to ascertain how and when the contract is to be made.

Sections 105 and 106 of chapter 24 of the Acts of 1916 provide the method of fixing the compensation of teachers as follows:

"All salaries of subdistrict teachers shall be based on, and regulated by the qualifications of the teacher and the number of children actually in attendance in proportion to the number enrolled in the school census for the district, graduated in accordance with, and in conformity to such rules and regulations governing same as shall be hereafter prescribed by the State Board of Education.

"The salary schedule of the counties of the state shall be reported to, and, if according to law, approved by the State Board of Education; and all rules and regulations governing the same promulgated by the State Board of Education shall conform to law; and the pur-

pose of the same shall be to increase the efficiency of the common school system."

From this it will be seen that the contract with a teacher cannot be made before the various county boards of education have prepared the salary schedules and the same are approved by the State Board of Education; and, that the trustees of the several school districts are not authorized to fix the compensation to be paid to any individual teacher, but that the county board of education fixes a general salary schedule, which, when approved by the State Board of Education, automatically determines the salary of each teacher in the county.

This salary schedule is regulated and based upon the qualification of the teacher and the number of children actually in attendance in proportion to the number enrolled in the school census for the district, and upon the fund available for the payment of teachers' salaries. Until these facts are determined it is impossible for the county board of education to prepare and submit a salary schedule.

Section 117 of chapter 24 of the Acts of 1916 specifically provides that the contract between the division board of education and the teacher shall prescribe that its terms are subject to all the provisions of the common school law; and, section 14 of that act requires the Superintendent of Public Instruction, on or before the 15th day of July of each year, to ascertain and estimate for the school year the *pro rata* share to which each pupil child shall be entitled according to the whole number of such children in each county, as shown by the returns of the county superintendents. Under section 51 of that statute the county superintendent was given until the 1st day of June of each year to place in the hands of the Superintendent of Public Instruction a report of the census of the children of his county.

From these provisions it is apparent that the Superintendent of Public Instruction could not have prepared an estimate of the *pro rata* to which each child is entitled until after June 1st; and, until this estimate is prepared and furnished to the county boards of education it is impossible for those boards to prepare a schedule. After the schedule has been prepared it must be submitted to the State Board of Education for its approval; and until the salary schedule has been made and approved, the con-

tract with the teacher is not completed. Consequently, as a matter of law, the contract is not entered into until after the schedule has been made and approved. From these provisions it is apparent that under the law, it was impossible that the plaintiff's contract, or any of the contracts of teachers, could have been entered into prior to the 18th day of June, 1918, the day upon which the act of 1918 became effective. It follows, therefore, that the act of 1918 fixing the plaintiff's compensation became a part of his contract.

This conclusion makes it unnecessary for us to consider the questions discussed concerning the applicability of section 19 of the Bill of Rights, or section 235 of the Constitution prohibiting the changing of the salaries of public officers during the terms for which they were elected.

The injunction granted by the circuit court is dissolved. The whole court sitting.