RENDERED: MAY 20, 2022; 10:00 A.M.
TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2020-CA-0475-MR

KENTUCKY RETIREMENT
SYSTEMS                                                          APPELLANT


APPEAL FROM FRANKLIN CIRCUIT COURT
v.          HONORABLE PHILLIP J. SHEPHERD, JUDGE
ACTION NO. 16-CI-01347


VICKIE WAGNER                                                    APPELLEE


OPINION
AFFIRMING

** ** ** ** **

BEFORE: CLAYTON, CHIEF JUDGE; K. THOMPSON AND L. THOMPSON, JUDGES.

THOMPSON, K., JUDGE: The Kentucky Retirement Systems (Systems) appeals from the Franklin Circuit Court's opinion and order which determined that Vickie Wagner would not have to repay retirement benefits from the Systems for being employed by a participating agency within three months of her retirement, where her employment did not entitle her to any retirement benefits. We agree with the

circuit court that any other outcome would be absurd as Wagner's continuing employment was extremely limited, did not entitle her to any retirement benefits, and only resulted in *de minimis* wages. We further conclude that such a result would not achieve the purpose or intent of the "double dipping" provision of Kentucky Revised Statutes (KRS) 61.637(17)(a). Accordingly, we affirm.

KRS 61.637(17)(a) provides in relevant part that the benefits of a retiree from Systems "shall be voided" if the retiree becomes "employed in a position that is not considered regular full-time with an agency participating in one (1) of the systems administered by Kentucky Retirement Systems . . . within three (3) months following the member's initial retirement date[.]"[1]

---

[1] The version of KRS 61.637(17)(a) in effect from July 2014 to June 2015, the relevant time period here, more fully provided:

> Except as provided by paragraphs (c) and (d) of this subsection, if a member is receiving a retirement allowance from one (1) of the systems administered by Kentucky Retirement Systems, or has filed the forms required to receive a retirement allowance from one (1) of the systems administered by Kentucky Retirement Systems, and is employed in a regular full-time position required to participate in one (1) of the systems administered by Kentucky Retirement Systems or is employed in a position that is not considered regular full-time with an agency participating in one (1) of the systems administered by Kentucky Retirement Systems within three (3) months following the member's initial retirement date, the member's retirement shall be voided, and the member shall repay to the retirement system all benefits received, including any health insurance benefits.

Though KRS 61.637 has been amended many times in the subsequent years, the changes have not substantively impacted the relevant, quoted portion of the statute.

The core facts are essentially uncontested. Wagner began working as a legal secretary for the local Commonwealth Attorney's office in 1988. In 2009, while still employed by the Commonwealth Attorney's office, Wagner began working limited, sporadic hours as an usher at an arena in Corbin, Kentucky (the Arena), which was then owned by a private entity. However, in 2010, the City of Corbin (Corbin) took over the Arena. Wagner then applied to work for Corbin, which hired her in early 2011 to continue working as an usher at the Arena. It is uncontested that Corbin participates in Systems, but it is also uncontested that Corbin did not contribute to Wagner's retirement benefits. In short, Wagner's usher job was with an entity which participated with Systems but in a job that had no impact on her retirement benefits and did not materially contribute to her support.

Wagner retired from the Commonwealth Attorney's office as of January 1, 2015. However, she continued to occasionally work as an usher at the Arena. The parties stipulated during the administrative proceedings that Wagner earned a total of nearly $300 for working at the Arena in February and March 2015.

On April 20, 2015, Wagner sent Systems a letter stating that she had returned to work at the Commonwealth Attorney's office as of April 16, 2015. The letter from Wagner to Systems also stated: "I have also worked since 2009 for

the City of Corbin at the Corbin Arena at events they have. These events only occur very, very sporadically, sometimes only a few times a year."

After Systems requested, and received, additional information about Wagner's employment at the Arena, it sent her a letter in June 2015 which voided her retirement and required her to repay $20,062.77, representing $15,102.85 in monthly retirement benefits between January and July 2015, as well as $4,959.92 in health insurance premiums paid by Systems during that period. Wagner filed an administrative appeal.

Eventually, a hearing officer issued findings of fact, conclusions of law, and a recommended order which was favorable to Wagner. The hearing officer concluded that it was "illogical" for Wagner's employment at the Arena to impact her retirement benefits since she "did not receive nor was entitled to received [sic] retirement benefits through her employment with the City of Corbin."

Systems filed exceptions to the hearing officer's recommended decision. In December 2016, Systems' Board of Directors rejected the hearing officer's decision. The Board concluded that the "sole issue" was whether Wagner was employed with an entity which participated in the Systems within three months of her retirement. Because it was uncontested that Wagner had worked for Corbin at the Arena within three months of retiring from the Commonwealth

Attorney's office, the Board concluded that Wagner's retirement benefits had to be voided under the plain language of KRS 61.637(17). The Board deemed it immaterial that Corbin did not contribute to Wagner's retirement benefits due to her employment at the Arena.

Wagner filed a petition for judicial review of the Board's decision in the Franklin Circuit Court. After briefing, the circuit court issued an opinion and order reversing the Board in March 2020. In relevant part, the court found that it would be improper for Wagner to have to repay over $20,000 in benefits:

> because of part-time, occasional pay earned between her retirement date and her reemployment with the [Commonwealth Attorney's office] . . . . [Wagner] has satisfied the three-month separation in service requirement because her part-time job with the City is not [a] covered position with the [Agency], and she did not pay into the Retirement Systems while working for the City of Corbin. Thus, the Court reverses the [Board's] Final Order directing [Wagner] to repay benefits conferred.

Systems then filed this appeal.

Since it sought to void Wagner's retirement and compel her to repay her benefits, Systems bore the initial burden of proof. *See* KRS 13B.090(7) (providing "[t]he agency has the burden to show the propriety of a penalty imposed or the removal of a benefit previously granted."). Since the Board ruled in favor of Systems, the party which bore the burden of proof, "the issue on appeal is whether the [administrative] agency's decision is supported by substantial evidence, which

is defined as evidence of substance and consequence when taken alone or in light of all the evidence that is sufficient to induce conviction in the minds of reasonable people." *McManus v. Kentucky Retirement Systems*, 124 S.W.3d 454, 458 (Ky.App. 2003). Our review of the circuit court's interpretation of statutes and administrative regulations, which underlies the heart of this appeal, is *de novo*. *Commonwealth v. Estate of Cooper*, 585 S.W.3d 253, 257 (Ky.App. 2019). "While agencies are entitled to great deference in interpreting their own statute[s] and regulations, the reviewing court has the ultimate responsibility in matters of statutory and regulatory construction." *Id.*

KRS 61.637(17)(a) would seem to apply to these facts since Wagner retired and was employed by a participating entity within three months of retirement. However, we agree with the circuit court and hearing officer that it would be absurd to use that statute to void Wagner's retirement benefits under these particular circumstances.

Generally, we are duty bound to interpret statutes as written, with no leeway to create exceptions when none exist or to engraft onto the statute additional language. *See, e.g.*, *University of Louisville v. Rothstein*, 532 S.W.3d 644, 648 (Ky. 2017); *Manning v. Kentucky Bd. of Dentistry*, 657 S.W.2d 584, 587 (Ky.App. 1983). However, courts decline to accord the language of a statute its literal meaning if doing so "would lead to an absurd or wholly unreasonable

conclusion." *Hill v. Thompson*, 297 S.W.3d 892, 895 (Ky.App. 2009). In other words, because "there is a presumption that the legislature will not intend an absurdity[,]" we are "unwilling to interpret the statute in a manner which would indeed lead to an absurd result[.]" *Id.* at 896. A result is absurd if, among other reasons, it is "against general common sense." *Id.*

Additionally, in interpreting a statute, we are to "consider[] the evil the law was intended to remedy." *Hearn v. Commonwealth*, 80 S.W.3d 432, 434 (Ky. 2002). In 2008, then Governor Steve Beshear called a special session of the General Assembly to reform our state pension system. In his remarks at the beginning of the Joint Session of the General Assembly, Governor Beshear expounded upon the fact that without reform the Commonwealth was facing "a financial catastrophe" and urged reform to among other things "curb practices such as double dipping" which cause "significant additional costs to the taxpayers of the Commonwealth." Kentucky Senate Journal, 2008 1st Ex. Sess. No. 1. "Double dipping" in this context is of course "the simultaneous receipt by retired public employees of both a salary for state reemployment and a state pension." *Retired Adjunct Professors of the State of R.I. v. Almond*, 690 A.2d 1342, 1347 (R.I. 1997). *See Baker v. Commonwealth*, No. 2005-CA-001588-MR, 2007 WL 3037718, at *1 (Ky.App. Oct. 19, 2007) (unpublished) (footnote omitted) (explaining that one who

"simultaneously enjoyed the benefits of his retirement from state government and the benefits of his employment by state government . . . was a 'double-dipper.'").[2]

KRS 61.637(17)(a) was part of the pension reform bill adopted by the General Assembly via its 2008 First Extraordinary Session, and the language we are interpreting here was intended to be a remedy against double dipping. It makes logical sense to prohibit employees who are drawing System retirement benefits from simultaneously drawing a substantial salary from participatory members in Systems during the three-month period after retirement or from making agreements that after retirement they will be rehired. Previously, such practices could cost the Commonwealth substantial sums as a retiree who was reemployed could draw double benefits. *See, e.g.*, *Baker*, 2007 WL 3037718, *1-7 (discussing the coordination of benefits and entitlement of the retiree/employee to receive the total premium amount above the fully paid health insurance cost paid through the cross-listing of the employer and Systems' plans, placed in a health savings account). But that is not the situation when it comes to Wagner's occasionally working for the Arena as she did before and after her retirement.

Surely the General Assembly did not intend to require a retiree, such as Wagner, to repay over $20,000 for earning around $300 in a job which had no

---

[2] We cite this case not as authority, but to confirm that the Rhode Island explanation of this term is consistent with how it is used in Kentucky, and later to give an example of double dipping.

impact whatsoever on her retirement benefits and could not tangibly contribute to her support. We agree with the circuit court and hearing officer that such a result is illogical, manifestly contrary to common sense, and does not forward the interests behind the pension reforms.[3] We cannot conclude that the General Assembly intended to subject persons who have dedicated their professional careers to serving the people of the Commonwealth of Kentucky before retiring to such a disparate, harsh, illogical result.[4] Wagner was simply continuing to engage in her very part-time usher duties as she had while she was working for the Commonwealth Attorney's office, both before and after the Arena was owned by Corbin. It is not logical to penalize her for this and reduce her promised benefits in this manner. *See generally Jones v. Bd. of Trustees of Kentucky Retirement Systems*, 910 S.W.2d 710, 713 (Ky. 1995) (discussing how "the retirement savings system has created an inviolable contract" with "benefits promised to participants").

Over a century ago, Kentucky's then-highest court held that "[t]he first duty of a court in interpreting a statute is to construe it, if possible, so as to

---

[3] The General Assembly must generally agree with this assessment as through 2016 Kentucky Acts ch. 25 (HB 153), it added KRS 61.637(17)(e) which provides that volunteers who earn a nominal fee for their volunteer services during this three-month period are not thereby prevented from also drawing their pensions. Although this provision was added after Wagner retired, we believe this provision would have prevented the injustice to her had it been in effect at that time.

[4] Because the Agency's interpretation of the statute cannot stand, we need not address the remainder of the parties' various other arguments.

give it sensible effect[.]" *Adams v. Greene*, 182 Ky. 504, 507, 206 S.W. 759, 760 (1918). The circuit court and hearing officer did so, and we agree with their interpretation that under the facts before us, Wagner's continuing employment with the Arena was insignificant in every respect that mattered.

Accordingly, we affirm the Franklin Circuit Court's opinion and order reversing the Board's decision requiring Wagner to repay her retirement benefits.

ALL CONCUR.

BRIEFS FOR APPELLANT:

Kevin Edelman
Frankfort, Kentucky

BRIEF FOR APPELLEE:

John Blevins
Corbin, Kentucky